## TERRY and others *against* OLCOTT.

The statute prohibiting the sale of lottery tickets in this state, issued under the authority of any other state, extends to the sale of tickets in a lottery authorized by the national government.

Where *A.* effected an illegal sale of a lottery ticket to *B.,* and such ticket having drawn a prize, *B.,* for a valuable consideration, assigned his inter-est to *C.,* who was ignorant of the previous illegal sale; after which, in satisfaction of the prize money, *A.* made and *B.* indorsed a promissory note to *C.;* it was held, that such note was valid.

This was an action against the defendant, as the indors-er of a promissory note, made by *Hezekiah Kilbourn.*

The case was tried at *Hartford, February* term, 1822, be-fore *Peters,* J.

On the trial, the making and indorsement of the note, the demand of payment, non-payment and notice, as alleged in the declaration, were admitted. It was also admitted, that in *March*, 1820, previous to the making of the note, *Kilbourn* kept an office, in the city of *Hartford*, for the sale of tickets in the "*National Lottery*,"—a lottery set up without special liberty from the General Assembly of this state; and there sold to *Charles Buck* a quarter of a ticket, No. 9008, in that lottery, for three dollars, having previously sold seven quarters of the same ticket. At the time of such sale, he gave to *Buck*, a writing of the following tenour: "NATIONAL LOTTERY. No. 9008. This ticket entitles the possessor to one quarter of such prize as may be drawn to its number, in the above-named lottery, according to the terms of the scheme, subject to a deduction of fifteen per cent. *March*, 1820. *Hezekiah Kilbourn*." In *October*, 1820, the ticket, No. 9008, in the *National Lottery*, drew a prize of 1000 dollars; and *Buck* afterwards assigned his scrip, for a valuable consideration, to the plaintiffs; in satisfaction of which, *Kilbourn* made, the defendant indorsed, and the plaintiffs accepted the note in suit, all knowing that said tickets were not issued under the authority of this state. The judge thereupon instructed the jury, that the note was void, and directed them to find a verdict for the defendant; which they accordingly did; and the plaintiffs moved for a new trial, on the ground of a misdirection.

*T. S. Williams* and *S. Terry*, in support of the motion, contended, 1. That the original transaction, *viz.* the sale of the ticket by *Kilbourn*, and the purchase by *Buck*, was not within the prohibition of the statute for preventing and suppressing lotteries. This statute applies only to the sale and purchase of tickets "issued from or under the authority of any other state." *Stat.* 477. ed. 1808. By the term *state*, in our statutes, is meant one of the confederated states of the Union. *Cohens* v. *Virginia*, 6 *Wheat* 292. *Hepburn & al.* v. *Ellzey*, 2 *Cranch* 445.

2. That the assignment by *Buck* to the plaintiffs of his interest in a prize already drawn, was not illegal. This was neither within the letter nor the spirit of the statute. The plaintiffs were the *bona fide* purchasers of the scrip; and had nothing to do with the original transaction.

*Hartford,*
*June.*
*1823.*

*Terry*
*v.*
*Olcott.*

3. That admitting the sale of the ticket to *Buck*, and the assignment by *Buck* of his interest in the prize to the plaintiffs, to be illegal ; yet *Kilbourn* was under a *moral obligation* to pay the plaintiffs the prize money ; and *that* was a good and sufficient consideration for an express promise. It was a *new* consideration. *Church* v. *Tomlinson*, 2 *Conn. Rep.* 134. n.

4. That to render the act of the plaintiffs in taking the assignment in a question, illegal, it must appear that they *knew* that the ticket had been *sold in this state*, contrary to the prohibition of the statute ; but it appears only that they knew that the ticket was not issued under the authority of this state— *i. e.* that the lottery was not granted by the General Assembly of this state. The plaintiffs might have been aware of this fact, and yet they might have honestly supposed, that the ticket was sold in the district of *Columbia*, or the city of *New-York;* in which case their contract would be valid. *Bull. N. P.* 146. *Coventry* v. *Barton*, 17 *Johns. Rep.* 142.

*Tousey*, contra, insisted, 1. That from the face of the scrip and the finding in the motion, it was sufficiently apparent, that the plaintiffs were acquainted with the whole transaction.

2. That the sale of the ticket was illegal, being within the spirit and policy, if not within the letter, of the statute. *Hunt & al.* v. *Knickerbacker*, 5 *Johns. Rep.* 327.

3. That if the sale of the ticket was illegal, the note given for the prize money, was void. *Shirley* v. *Sankey & al.* 2 *Bos. & Pull.* 130. *Steers* v. *Lashley*, 6 *Term Rep.* 61. *Lansing* v. *Lansing*, 8 *Johns. Rep.* 454. No contract can arise directly out of an illegal transaction, on which an action can be sustained. *Mitchell & al.* v. *Cockburn*, 1 *H. Bla.* 379. *Booth & al.* v. *Hodgson & al.* 6 *Term Rep.* 405. *Brown* v. *Turner*, 7 *Term Rep.* 626. *Webb* v. *Brooke*, 3 *Taun.* 6. *Cannan & al.* v. *Bryce*, 3 *Barn. & Ald.* 179.

Hosmer, Ch. J. By the act for preventing and suppressing lotteries, it is enacted, " That no person or persons whatever shall, *within this state*, buy, purchase, sell or otherwise dispose of any lottery ticket, issued from or under the authority of *any other state whatever*." (*a*) This law was aimed not only against the sale of tickets, authorized by any of the *United States*, but against the sale of such as proceeded from any

(*a*) *Stat.* 477. ed. 1808.

other sovereignty. The words of the law, undoubtedly, reach to this extent; and the object of it entirely harmonizes with the expression. It was the intent of the legislature to prohibit a species of gambling highly detrimental to the state; and the sale of tickets, issued by the authority of other governments, is equally pernicious as the vending of those, which emanate from a sister state. The decisions of the supreme court of the *United States*, cited from the reports of *Cranch* and *Wheaton*, in which it was adjudged, that the term *state*, as used in the federal constitution, contemplated this confederacy only, were unquestionably correct. The comprehensive sense of the word, is, in the constitution, restrained by the subject matter; while, in its more enlarged signification, it includes all republics, and governments not monarchial; and even monarchies, if they fall within the reason of its use.

The original transaction between *Kilbourn* and *Buck*, was opposed to the direct prohibition of the statute; and of consequence, it was illegal and void. *Lowe* v. *Peers*, 4 *Burr.* 2225. *Bartlett* v. *Vinor*, *Carth.* 252.

I do not consider it necessary to decide the question, whether the note indorsed by the defendant, was on a *new* consideration, and thus rescued from the objection of illegality. Admitting, for the sake of argument, that it was not; yet, if the plaintiffs, at the time when they became the assignees of *Buck*, and when the note in suit was executed, were uninformed, that the ticket was sold " within this state," their contract was lawful and unimpeachable. *Cuthbert* v. *Haley*, 8 *Term Rep.* 390. *Coventry* v. *Barton*, 17 *Johns. Rep.* 142. 1 *Vin. Abr.* 299. *pl.* 27.

On inspecting the motion, it appears neither expressly, nor by construction, that the plaintiff had knowledge where the ticket was sold, or that it was purchased by *Buck* in violation of the statute. *Kilbourn's* certificate does not mention the place of sale; and the motion merely states, that the parties knew " said ticket was not issued under the authority of this state." It is entirely compatible with this assertion, that the ticket was sold to *Buck* in the city of *New-York*.

The charge of the judge, that the note in suit was void, was incorrect; and for this reason, I would advise a new trial.

In this opinion the other Judges concurred, on the ground taken by the Chief Justice. CHAPMAN, BRAINARD and BRIS-

HARVARD LAW LIBRARY

*Hartford,*
*June,*
*1823.*

*Terry*
*v.*
*Olcott.*

TOL, Js. were also of opinion, that there was a new consideration for the note.

New trial to be granted.