CHARLES J. McLAUGHLIN, TAX COMMISSIONER *v.*
LILIAN S. POUCHER, EXECUTRIX, ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued December 3, 1940—decided January 10, 1941.

442

*Frederick W. Dauch,* deputy tax commissioner, with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the plaintiff.

*John T. Curtis,* for the named defendant et als.

*W. Arthur Countryman, Jr.,* for the defendant Boy Scouts of America.

*Francis Schiaroli* appeared for the defendant Girl Scouts, Inc.

MALTBIE, C. J. Frank C. Poucher, who had his domicil in Connecticut, died on March 1, 1935, leaving a will in which he made many charitable bequests. Among them were gifts to certain charitable organizations incorporated or organized under the laws of the state of New Jersey, a gift to the Boy Scouts of America, incorporated under an act of the Congress of the United States, and one to the Girl Scouts, incorporated and organized under the laws of the District of Columbia. At the time of Mr. Poucher's death our statutes contained, as they still do, a provision exempting from the succession tax, transfers of a charitable nature made to "any corporation, institution, society, association or trust, incorporated or organized under the laws of this state or of any state whose laws provide a similar exemption of transfers to any similar Connecticut corporation, institution, society, association or trust." General Statutes, Cum.

Sup. 1933, § 363b; Cum. Sup. 1935, § 489c. The statute of New Jersey in effect at the time of Mr. Poucher's death provided that bequests to organizations of the type of those here in question "wheresoever incorporated or located" should be taxed "at the rate of five per centum on any amount in excess of five thousand dollars." Laws of New Jersey (1934) p. 702; 2 Revised Statutes of New Jersey (1937) § 54.34-2. The Court of Probate held that the bequests to the New Jersey organizations were exempt from the succession tax to, and only to, the extent of $5000, and that the other bequests were wholly exempt. The tax commissioner appealed from that decree to the Superior Court and the case was reserved for our advice. It is not questioned that all these gifts would be exempt from taxation if the beneficiaries were Connecticut organizations or corporations.

Previous to 1925, exemptions of charitable gifts from the succession tax were limited to corporations or institutions located in this state. In that year the statutes were amended so as to abolish any distinction between corporations and organizations of this state and those of other states, the provision being that such gifts should be exempt when made to beneficiaries "wherever situated." Public Acts, 1925, Chap. 47; *Silberman* v. *Blodgett,* 105 Conn. 192, 217, 134 Atl. 778. In 1931 the statute was again amended into its present form. In the report of the tax commissioner for the years 1931-1932 it is said that this change was made because it was found that while gifts in this state for charities located in other states were exempt from the tax, many states did not provide a like exemption for gifts to Connecticut charities. The basis upon which rests the policy of granting tax exemptions to charities is the fact that the corporations or organizations so favored either

directly lighten the burden of the state in caring for those in need of assistance or indirectly further the interests of the state by the public benefit they promote; where a gift is made in one state to a charity operating in another, this benefit to the former is of course lacking; and upon this ground statutes granting exemptions in general terms have been construed to apply only to charities operating in the state which enacted them. *Carter* v. *Whitcomb*, 74 N. H. 482, 490, 69 Atl. 779; *People* v. *O'Donnell*, 327 Ill. 474, 476, 158 N. E. 727; Kidder, State Inheritance Tax, 435. If it is the policy of a state not to exempt gifts to charities located within it, there is little, if any, reason why exemptions should be granted to such charities in another state. On the other hand, a tax imposed by another state upon gifts to charities located here works a restriction upon the extent to which public benefit may here result from it. There is justification for such reciprocal provisions as the one before us, in that they may well serve to encourage other states to extend their laws exempting charities to include those located here. The rule that statutory provisions making exemptions from general laws imposing taxes are to be construed strictly applies to gifts of a charitable nature. *Klein* v. *Bridgeport*, 125 Conn. 129, 131, 3 Atl. (2d) 675. However, "the rule in truth is based upon a presumption of intention; the legislature ordinarily intends its laws to apply to all equally; it does not intend to grant privileges to select individuals. So when exceptions or special privileges are claimed under a statute, this ordinary or presumptive intention is entitled to weight, according to the circumstances, in ascertaining the actual intention expressed by the language used." *Yale University* v. *New Haven*, 71 Conn. 316, 329, 42 Atl. 87. In considering the scope of the provision before us, we must bear in mind the

purpose which it was intended to serve. *Bliss* v. *Bliss,* 221 Mass. 201, 210, 109 N. E. 148.

In comparing the laws of another state with our own to determine whether similar exemptions are granted, the totality of their operation is not the test. If, under the laws of another state, the particular gift in question, if made to a charity located here, would be exempt, the purport of the statute is that a similar gift to a charity of that state is exempt under our law. That this is the legislative intent is apparent from the provision that the exemption applies where there is a similar one made in the laws of another state to "any similar Connecticut corporation." Thus the exemption granted in another state might not include gifts to all types of corporations and organizations exempt under our law, or the statutes of that state might be broader in scope than our law; but if a gift to a particular Connecticut corporation under the laws of another state would be exempt, a bequest to a "similar corporation" of that state would be exempt here. See *State ex rel. Dawson* v. *Davis,* 88 Kan. 849, 853, 129 Pac. 1197. The will before us did not make bequests of stated amounts to the organizations in question, but gave to each a fractional part of the residue of the estate, and the record does not show whether or not the amount given to any of the New Jersey organizations exceeded $5000, the limit of the exemption of charitable gifts in that state. If any gift did not exceed that amount, it would be exempt from our succession tax. However, the presence of this case before us carries the implication that the amounts of some of these gifts did exceed that sum, and so a further inquiry is necessary.

The difference between the statutes of Connecticut and New Jersey as to such gifts is at once apparent: Under the former the entire bequest is exempt, while

under the latter it is exempt only to the amount of $5000. It becomes necessary, then, to determine whether or not, in case of a gift exceeding that sum, the statutes of New Jersey afford a "similar exemption" to a Connecticut corporation to that granted in our law. While the word "similar" has at times been construed as synonymous with "same" or "identical," its usual significance is that contained in the definition in Webster's International Dictionary, "nearly corresponding; resembling in many respects; somewhat like; having a general likeness." *Fidelity & Deposit Co.* v. *Brown*, 92 Vt. 390, 394, 104 Atl. 234; *Fletcher* v. *Interstate Chemical Co.*, 94 N. J. L. 332, 110 Atl. 709; *Bonsall's Estate*, 288 Pa. St. 39, 41, 135 Atl. 724. The word as ordinarily used implies an allowance for some degree of difference. Obviously in the provision in question it was intentionally adopted because of variances in the particular provisions of the statutes of the different states granting exemptions to charities. The question is as to the degree of difference which is allowable under the statute.

We cannot hold that as to any gift in excess of $5000 the laws of New Jersey provide "a similar exemption" to that granted by our laws. If the gift exceeded that sum only by a small amount, the difference in effect would not be great; but if, as an illustration, we take a gift of $25,000, the difference between exempting the whole sum and exempting it only to the extent of $5000 and taxing the remaining $20,000 at 5 per cent, is too great to permit the exemptions to be regarded as similar. Nor can we adopt the position taken by the Court of Probate, that the gifts are to be exempted to, and only to, the extent of $5000. That would be to read our statute as though it said that charitable gifts to corporations or organizations of another state are exempt here *to the same extent* that gifts to Con-

necticut charities are exempt under the laws of that state. Had the legislature intended such a result, the statute would certainly have been worded differently. Its intent is clear, that if there is any exemption it is of the gift as a whole and not of some portion of it.

It is not questioned that at the time of the decedent's death the gift to the Boy Scouts of America was not liable to a tax under the federal estate tax law and the gift to the Girl Scouts, Inc., was not liable to a tax under the laws of the District of Columbia. As to these gifts, the question presented is whether, in view of the fact that the former is incorporated under an act of the Congress of the United States and the latter under the laws of the District of Columbia, they are within the provision as "incorporated or organized under the laws . . . of any state" whose laws provide a similar exemption. The word "state" has various meanings. *Texas* v. *White,* 74 U. S. (7 Wall.) 700, 720; 30 Am. Jur. 180. It has been defined broadly as signifying a body of people occupying a definite territory and politically organized under one government. Webster's International Dictionary; Bouvier, Law Dictionary; 1 Cooley, Constitutional Limitations (8th Ed.) p. 1. Whether or not the District of Columbia is within the meaning of the word as it is used in written law has been differently determined according to the intended scope of the particular provision in question. Cf. *Metropolitan R. Co.* v. *District of Columbia,* 132 U. S. 1, 9, 10 Sup. Ct. 19; *Geofroy* v. *Riggs,* 133 U. S. 258, 268, 10 Sup. Ct. 295; *Talbott* v. *Silver Bow County,* 139 U. S. 438, 444, 11 Sup. Ct. 594; *Downes* v. *Bidwell,* 182 U. S. 244, 270, 21 Sup. Ct. 770. The word "state" is quite generally used in connection with constitutional law in this country as meaning the individual states making up the Union, in contradistinction to the United

States as a nation. Cooley, op. cit., 1. However, the United States is a "state" as that word is frequently used in international law. 33 C. J. 386, note. In *Terry* v. *Olcott,* 4 Conn. 442, we held that a law prohibiting the sale in this state of lottery tickets issued "under the authority of any other state" included tickets authorized by the national government, saying (p. 445): "The comprehensive sense of the word [state], is, in the constitution, restrained by the subject-matter; while, in its more enlarged signification, it includes all republics, and governments not monarchial; and even monarchies, if they fall within the reason of its use." There is no such strictness in the significance to be accorded the word as precludes the inclusion in it of the District of Columbia or the United States, if to do so will carry out the legislative intent expressed in the statute.

It need hardly be said that there is no reason why the reciprocal provision in question should not operate when applied to corporations of the District of Columbia as fully as in the case of corporations organized under the laws of one of the states which in the aggregate compose the United States. The District of Columbia is, as regards the imposition of an inheritance tax, an independent unit of government, differing in no relevant respect from the states composing the Union. As regards the United States, it was stated in argument before us that the only two corporations ever directly incorporated by act of Congress are the Boy Scouts of America and the Red Cross, and it is perhaps a fair test of the legislative intent to ask whether an intention could reasonably be attributed to the General Assembly to exclude from exemption all gifts to the Red Cross, which would be the effect of construing the words "corporation . . . of

any state" as not including one incorporated under an act of Congress. We cannot believe that the intent was to have only corporations of those states which in the aggregate make up the United States included within the provision in question and we hold that the words quoted include corporations existing under the laws of the District of Columbia or acts of the Congress.

It is true that the opening provision of the section of the statutes which we are considering exempts from the succession tax "all transfers to or for the use of the United States, any state or territory, or any political subdivision thereof, the District of Columbia." If this law as it now stands had been originally enacted as a unit, the distinction made in this provision would strongly suggest that the word "state" in the portion of the statute now before us is intended to have the more restricted significance with which it is clearly used in the above quotation. The language quoted was, however, a part of the law long before it was amended to include the provision we are now considering. General Statutes, § 1367. There is not, therefore, the same reason to apply the rule of construction that a word once used with a definite meaning in an instrument will, in case of ambiguity, be given the same meaning when used elsewhere in it. We do not regard this principle of construction as sufficient to overcome the intention which, reading the provision before us in the light of its purpose and effect, we find that the legislature intended to express.

We advise the Superior Court that if the amount of any of the bequests to the New Jersey organizations and institutions does not exceed $5000, it is exempt from the Connecticut succession tax, but any bequest which does exceed that amount is not exempt, and

450

that the bequests to the Boy Scouts of America and to the Girl Scouts, Inc., are wholly exempt.

No costs will be taxed in this court.

In this opinion the other judges concurred.