WILLIAM J. KUEHNE ET AL. *v.* TOWN COUNCIL OF THE TOWN OF EAST HARTFORD

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON AND BALDWIN, JS.

Argued January 5—decided February 28, 1950.

*Ralph C. Dixon,* for the appellants (plaintiffs).

*Leon A. Winslow,* for the appellee (defendant).

MALTBIE, C. J. The plaintiffs, certain property owners, appealed to the Court of Common Pleas from the granting by the defendant of an application for a change in the zoning of a piece of property owned by Wilfred H. Langlois from an A residence to an A business zone. The trial court dismissed the appeal and the plaintiffs have appealed.

We are met at the outset with a claim by the plaintiffs that the defendant town council was without authority to grant the application. This claim is based on the following statutory situation: Prior to 1929 the powers with respect to zoning were by statute vested in "the zoning authority" of the various municipalities; but it was also provided that the "zoning authority" should be a "zoning commission," except that in cities and boroughs where there was no zoning commission the zoning authority should be its board of aldermen or other body having power to adopt ordinances. Public Acts, 1925, c. 242, § 1. Before 1929 the town of East Hartford was, as regards zoning, divided into three parts—two fire districts and the portion of the town lying outside those districts; each fire district had established zoning within its area and the town had appointed a zoning commission for the rest of the town. See *State ex rel. Bezzini* v. *Hines,* 133 Conn. 592, 593, 53 A. 2d 299. In 1929, under a special law, the various municipalities in the town were consolidated. 20

Spec. Laws 1113. Section 43 of that act provided: "The town council shall be the zoning commission of and for the entire town. The zoning by-laws and ordinances existing at the time of the taking effect of this act are validated and approved, and such by-laws and ordinances shall continue in force and effect until such time as the same shall be amended or repealed in accordance with the general statutes. The powers and duties of the zoning commission shall be those powers and duties prescribed by the general statutes."

Section 1 of the 1925 act became § 423 of the Revision of 1930. In 1931 that section was amended; it still vested zoning powers in the zoning authority in each municipality and provided that the zoning authority should be a zoning commission, with an exception as to any "city or borough" like that in the 1925 act. General Statutes, Sup. 1931, § 42a; Cum. Sup. 1935, § 88c. In 1939 certain amendments to the 1929 special law consolidating the municipalities in East Hartford were enacted, and among them was one which altered the language of § 43 of that act to read: "The town council shall be the zoning authority of and for the entire town"; the act went on to provide that existing zoning regulations should continue in force; and the amendment concluded: "The powers and duties of the zoning authority shall be those powers and duties prescribed by the general statutes." 23 Spec. Laws 38, § 7. The apparent purpose of this act was to give to the town council of East Hartford the same powers as by the 1931 act were vested in the legislative bodies of cities and boroughs.

In 1947 the General Assembly enacted a statute which in effect rewrote a large part of the law as to zoning. General Statutes, Sup. 1947, c. 29. In this act the words "zoning authority" were omitted. The act provided in the first section, § 121i, that any town,

city or borough might adopt the act and exercise through a zoning commission the powers granted in it; that, in each town except as otherwise provided by special act, the zoning commission should consist of five electors chosen in a specified way; and that in a city or borough the board of aldermen or other body having power to adopt ordinances or regulations should be the zoning commission. In subsequent sections the powers granted were vested in the "zoning commission" of the municipality. In September, 1947, the town council of East Hartford voted that the provisions of the act should be adopted and that the town through a zoning commission should exercise the powers granted in it; and it instructed the town counsel to prepare an ordinance to carry out the vote. In November, 1947, apparently before any such ordinance had been adopted, the council rescinded that vote and passed another, in which it simply adopted the provisions of the 1947 act.

The claim of the plaintiffs is that as, under the express terms of the 1939 special law, the town council of East Hartford is its "zoning authority" and the 1947 act vests all powers with reference to zoning in the "zoning commission" of each municipality, the town council cannot legally exercise those powers, that is to say, that the town of East Hartford is within the exception of the 1947 act which provides that in each town, "except as otherwise provided by special act," there shall be a zoning commission chosen as specified, so that the town council still continues to be the "zoning authority" in the town, but because all zoning powers in the act are vested in a "zoning commission" the town council is shorn of all power to exercise them.[1] That the General Assembly could not have in-

[1] Intentionally or otherwise the plaintiffs by so restricting their claim have avoided the rule that on an appeal from an administra-

tended such a result hardly need be said. In construing the terms of the statute, we are justified in seeking a meaning which would avoid this result even at the expense of departing from the literal meaning of the words used. *Bridgeman* v. *Derby,* 104 Conn. 1, 8, 132 A. 25; *Chambers* v. *Lowe,* 117 Conn. 624, 626, 169 A. 912. The interpretation "must, if possible, be such as will effect the real purpose for which the statute was enacted." *Merchants Bank & Trust Co.* v. *Pettison,* 112 Conn. 652, 655, 153 A. 789; *West Hartford* v. *Thomas D. Faulkner Co.,* 126 Conn. 206, 211, 10 A. 2d 592. "The reason and purpose of the legislation as shown by its provisions may well be more significant than technical definitions in determining the meaning of the particular words employed." *Hartford Electric Light Co.* v. *McLaughlin,* 131 Conn. 1, 5, 37 A. 2d 361. Thus in *McLaughlin* v. *Poucher,* 127 Conn. 441, 448, 17 A. 2d 767, we construed the word "state" to include the federal government and the District of Columbia, where it was necessary to do so to carry out the legislative intent.

The words "zoning authority" used in the 1925 and 1931 acts were evidently adopted to give zoning powers to other bodies than zoning commissions where under special laws such bodies had been vested with authority to act in that capacity; and except for such situations "zoning commission" and "zoning authority" referred to the same instrumentalities of government. The 1947 act accomplished that purpose by expressly constituting such bodies zoning commissions, and then, in the enumeration of the powers of zoning bodies, used only the expression "zoning commission." There plainly was no intent to alter in any way the functions

---

tive board a claim cannot properly be made that the board has no legal existence. *Spector Motor Service, Inc.* v. *Walsh,* 135 Conn. 37, 42, note, 61 A. 2d 89.

of the particular authority which in any municipality exercised zoning powers under a special law. The 1947 statute, literally applied, covered the situation in all cities and boroughs and in all towns except those, like East Hartford, where the legislative body was given "zoning authority." It is not possible to suppose that, by the use of the words "zoning commission" in the grant of zoning powers, the General Assembly intended such an unreasonable discrimination as would follow if the "zoning authority" could not exercise those powers. The words "zoning commission" cannot be taken to mean only bodies constituted in strict compliance with the provisions as to their choice specified in the act; the only sensible conclusion to reach is that they include a body which had by special law been previously granted zoning powers, even though it had been designated as a "zoning authority." The town council of East Hartford can legally exercise the powers given zoning commissions by the 1947 act.

The appeal in this case was not one where the trial court was called to act in the absence of a full record of the proceedings before the zoning authority, and where therefore it was compelled itself to find the facts and decide the case upon the assumption that these were the facts the town council considered in reaching its decision. *Berkman* v. *Board of Appeals,* 135 Conn. 393, 397, 64 A. 2d 875. The court had before it not only the formal record of the action taken by the council but a stenographic transcript of the evidence offered before it. Acting under the provision of § 429 of the 1930 Revision (Rev. 1949, § 844) that if testimony appeared to be necessary for the equitable disposition of the appeal it might be received, the court heard certain witnesses and admitted certain exhibits. It made a finding which was in some respects based on the transcript of the testimony before the board. The

finding in such a situation should only contain facts which a court finds upon the basis of the evidence taken by it. *Dion* v. *Dion*, 128 Conn. 416, 417, 23 A. 2d 314; Conn. App. Proc. § 70. We shall review the decision of the trial court upon the basis of the proceedings before the zoning authority, with such additional facts as have been properly found by the court upon the basis of the evidence it heard.

Main Street in East Hartford runs substantially north and south. The petitioner before the town council, Langlois, owned a piece of land on the east side of it which he had been using for growing fruit and vegetables, and he has had upon it a greenhouse and a roadside stand for the sale of products of the land. The premises, ever since zoning was established in East Hartford in 1927, had been in an A residence district. Langlois made an application to the town council to change to an A business district a portion of the tract fronting on Main Street for about 500 feet and extending to a depth of 150 feet. He intended, if the application was granted, to erect upon the tract a building containing six or eight stores, apparently in the nature of retail stores and small business establishments calculated to serve the needs of residents in the vicinity. Starting at a business district to the north and extending for almost three miles to the town boundary on the south, the land along Main Street and extending to a considerable depth on each side of it has been, ever since zoning was established in the town, in an A residence district, with certain exceptions hereinafter described. Seven hundred feet north of the Langlois property is a small business district lying on both sides of Main Street; the land on the east side is used for a fruit and vegetable stand, a milk bar and a garage and gas station; and the land on the west side, with an area a little larger than the Langlois tract in ques-

tion, is now unoccupied. About 500 feet south of the Langlois property is another small business district in which is located a grill and restaurant, a drugstore, a cleaning and dyeing business and a large grocery and meat market. Formerly the land about the tract in question was used quite largely for agricultural purposes, but within the last few years a large residential community, comprising some one thousand houses, has grown up in the vicinity.

The application to the town council was based upon the claim that residents in the vicinity need the stores and services which could be located in the building Langlois proposed to erect. There was, for example, a petition filed with the council in support of the application signed by fifty-one of those residents which asked it to allow such a change as might be necessary to permit for their benefit a shopping center on the property. None of the signers, however, owned property on Main Street or in the immediate vicinity of the Langlois property. On the other hand, the application was opposed by the owner of property directly opposite the tract in question and by the owners of the two properties fronting on Main Street immediately south of the Langlois land.

The council voted that the application "be granted for the general welfare and the good of the town in that section." In *Bartram* v. *Zoning Commission,* 136 Conn. 89, 68 A. 2d 308, we recently had before us an appeal from the granting by a zoning commission of an application to change a lot in Bridgeport even smaller than the tract here in question from a residence to a business zone, and we sustained the action of the commission. We said (p. 93): "A limitation upon the powers of zoning authorities which has been in effect ever since zoning statutes were made applicable generally to municipalities in the state is that the

regulations they adopt must be made 'in accordance with a comprehensive plan.' Public Acts, 1925, c. 242, § 3 (Rev. 1949, § 837). 'A "comprehensive plan" means "a general plan to control and direct the use and development of property in a municipality or a large part of it by dividing it into districts according to the present and potential use of the properties." ' *Bishop* v. *Board of Zoning Appeals,* 133 Conn. 614, 618, 53 A. 2d 659; *State ex rel. Spiros* v. *Payne,* 131 Conn. 647, 652, 41 A. 2d 908. Action by a zoning authority which gives to a single lot or a small area privileges which are not extended to other land in the vicinity is in general against sound public policy and obnoxious to the law. It can be justified only when it is done in furtherance of a general plan properly adopted for and designed to serve the best interests of the community as a whole. The vice of spot zoning lies in the fact that it singles out for special treatment a lot or a small area in a way that does not further such a plan. Where, however, in pursuance of it, a zoning commission takes such action, its decision can be assailed only on the ground that it abused the discretion vested in it by the law. To permit business in a small area within a residence zone may fall within the scope of such a plan, and to do so, unless it amounts to unreasonable or arbitrary action, is not unlawful." It appeared in that case that the change was granted by the commission in pursuance of a policy to encourage decentralization of business in the city and to that end to permit neighborhood stores in outlying districts. It is true that we said in that opinion (p. 94) that if the commission decided, "on facts affording a sufficient basis and in the exercise of a proper discretion, that it would serve the best interests of the community as a whole to permit a use of a single lot or small area in a different way than was allowed in surrounding territory, it would

not be guilty of spot zoning in any sense obnoxious to the law." We meant by that statement to emphasize the fact that the controlling test must be, not the benefit to a particular individual or group of individuals, but the good of the community as a whole, and we did not mean in any way to derogate from our previous statement that any such change can only be made if it falls within the requirements of a comprehensive plan for the use and development of property in the municipality or a large part of it. See *Parsons* v. *Wethersfield*, 135 Conn. 24, 29, 60 A. 2d 771.

In the case before us it is obvious that the council looked no further than the benefit which might accrue to Langlois and those who resided in the vicinity of his property, and that they gave no consideration to the larger question as to the effect the change would have upon the general plan of zoning in the community. In fact, the controlling consideration seems to have been that Langlois intended to go ahead at once with his building rather than any consideration of the suitability of the particular lot for business uses, because there is no suggestion in the record that the council considered the fact that only some 700 feet away was a tract of land already zoned for business which, as appears from the zoning map in evidence, was more easily accessible to most of the signers of the petition than was the Langlois land.

In *Strain* v. *Mims*, 123 Conn. 275, 287, 193 A. 754, we said "One of the essential purposes of zoning regulation is to stabilize property uses." In this case it is significant that the change was opposed by the owners of three properties so situated as to be most affected by it, while those who supported it were the owner of the tract and residents who did not live in its immediate vicinity. It should also be noted that the petition they signed contained a provision that it should

not be construed as supporting permission for the use of the premises as a liquor outlet, but at the hearing before the council the attorney for Langlois in effect conceded that the zoning regulations permitted such a use in an A business district; and if that is so and the change were granted, it is quite possible that the premises would be sooner or later converted to such a use.

·The action of the town council in this case was not in furtherance of any general plan of zoning in the community and cannot be sustained.

While the matter was not called to the attention of the trial court or raised before us, we note that the appeal in this case was served only upon the town council. As the effect of sustaining it is to deprive Langlois of a right which had been granted to him by the council, he was a necessary party to the proceeding. *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 218, 220, 43 A. 2d 304. Before judgment can be entered sustaining the appeal, the trial court should cause him to be cited into the case as a party and give him an opportunity to be heard. *Chiarelli* v. *Pentino,* 100 Conn. 686, 689, 124 A. 806.

There is error, the judgment is set aside and the case is remanded to be proceeded with according to law.

In this opinion the other judges concurred.