STATE EX REL. THOMAS MAISANO v. CHARLES R. MITCHELL, SR.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued April 5—decided June 26, 1967

*Robert N. Grosby,* for the appellant (plaintiff).

*Daniel E. Reed, Jr.,* for the appellee (defendant).

RYAN, J.   On November 2, 1965, an election was held in the second taxing district of the city of Norwalk to elect one member to the three-man board of district commissioners in accordance with the provisions of No. 352 of the 1913 Special Acts. 16 Spec. Laws No. 352, p. 1046 § 25, p. 1056 § 57. The two members of the board whose terms did not expire on November 3, 1965, were members of the Democratic party. In the election, the relator, hereinafter referred to as the plaintiff, a candidate and member of the Republican party, polled 872 votes; the

respondent, hereinafter referred to as the defendant, a candidate and member of the Democratic party, polled 1884 votes and was declared elected. Since November 3, 1965, the defendant has exercised all rights pertaining to that office. The plaintiff and the defendant were the only candidates seeking the office. By virtue of the defendant's occupancy of the office, the board is now composed entirely of members of the Democratic party. The plaintiff, having polled the second highest number of votes, claimed that, since the defendant was a Democrat, under the provisions of the minority representation statute,[1] he was unlawfully exercising the powers of the office to the exclusion of the plaintiff, who was the duly elected member of the board.

The question before the trial court was whether the provisions of § 9-167a of the General Statutes (Rev. to 1964) apply to the election of district commissioners of the second taxing district of the

---

[1] "[General Statutes (Rev. to 1964)] Sec. 9-167a. MINORITY REPRESENTATION. (a) The maximum number of members of any board, commission, committee or similar body of the state or any political subdivision thereof, whether elective or appointive, except any such board, commission, committee or body whose members are elected on the basis of a geographical division of the state or such political subdivision, who may be members of the same political party shall be as specified in the following table:

| COLUMN I | COLUMN II |
|---|---|
| Total Membership | Maximum from one Party |
| 3............................2 | |

. . . (b) Prior to any election for or appointment to any such body, the town clerk, in cases of elections, and the appointing authority, in cases of appointments, shall determine the maximum number of members of any political party who may be elected or appointed to such body at such election or appointment. Such maximum number shall be determined for each political party in the

city of Norwalk. In its memorandum of decision, the trial court decided that the second taxing district is not a political subdivision of the state within the meaning of the statute, that the minority representation statute did not apply, and that the defendant was properly occupying the office. The several special defenses interposed by the defendant were overruled by the trial court, and judgment was rendered for the defendant.

From the decision of the trial court, the plaintiff has appealed to this court. The question before us is whether the second taxing district of the city of Norwalk is a political subdivision of the state within the meaning of § 9-167a. The defendant has not appealed from the action of the trial court in overruling his special defenses. The trial court in its finding concluded that the board of district commissioners possesses and exercises a wide scope of governmental functions comparable to those of a municipality, that the second taxing district is a body politic and corporate created by special act

following manner: From the number of members of one political party who are members of such body at the time of the election or appointment, subtract the number of members of such political party whose terms expire prior to the commencement of the terms for which such election or appointment is being held or made and subtract the balance thus arrived at from the appropriate number specified in column II of subsection (a) of this section. (c) In the case of any election to any such body the winner or winners shall be determined as under existing law with the following exception: The town clerk shall prepare a list of the candidates ranked from top to bottom according to the number of votes each receives; when the number of members of any one political party who would be elected without regard to this section exceeds the maximum number as determined under subsection (b) of this section, only the candidates of such political party with the highest number of votes up to the limit of such maximum shall be elected, and the names of the remaining candidates of such political party shall be stricken from the list. The next highest ranking candidates shall be elected up to the number of places to be filled at such election. . . ."

of the General Assembly, that the second taxing district is managed by the board of district commissioners, who are elected at large from the district, that area or geographical representation to the government of the city of Norwalk is not involved, that the second taxing district is a political subdivision of the city but is not a political subdivision of the state, and that § 9-167a has no application to the board of commissioners of the second taxing district.

To determine the question before us, it is necessary to examine various special acts of the General Assembly relating to the second taxing district and the city of Norwalk. In 1913, the cities of Norwalk and South Norwalk, the town of Norwalk and the East Norwalk fire district were consolidated and incorporated into the city of Norwalk. 16 Spec. Laws 1038, No. 352. At the time of this consolidation, the city was divided into five taxing districts. The first comprised the former city of Norwalk; the second, the territory of the former city of South Norwalk; the third, the territory of the former East Norwalk fire district; the fourth, the territory of the first, second and third taxing districts; and the fifth, all the territory of the consolidated city. 16 Spec. Laws 1040, No. 352 §§ 3, 4.

Each of these districts was given certain powers and obligations. The second taxing district was composed of a definite area geographically. All the electors dwelling within the area were constituted a body politic and corporate, capable of suing and being sued, pleading and being impleaded. The district was empowered to hold, purchase, sell and convey any estate, real or personal, to have a common seal, to succeed to and possess all the property, both real and personal, of the former city of South

Norwalk, and to succeed to and possess all the rights, powers, franchises, privileges and immunities previously granted to the city of South Norwalk and to the water commissioners of that city. It succeeded to all the property rights of the city of South Norwalk, was authorized to operate and manage the water system and the electric light and power plant with the same rights and authority as the city of South Norwalk formerly possessed and was subject to the same liabilities as those imposed on the city of South Norwalk. It succeeded to and possesses all the rights and privileges of the city of South Norwalk in respect to the public library and is required to continue to support and maintain it. 16 Spec. Laws 1045, No. 352 § 22.

The act provided for an annual district meeting and for the election of district commissioners, a treasurer and a board of electrical commissioners. Provision was made for the appointment of a district clerk and for the employment of mechanics and laborers necessary to manage, operate, control and keep in repair the real, personal and mixed estate of any district. 16 Spec. Laws 1046, No. 352 §§ 24, 25. Section 26 of the act authorized and empowered the district commissioners to purchase and take conveyances in the name of the district of all lands and property necessary for the purposes of the act; to hold in sufficient quantities the waters of any stream, either within or without the district; to construct suitable dams; to enter upon lands to procure earth, stone or other material for the construction of the dams; to make suitable waste ways for the surplus water of the streams; to change the location of roads or pathways which may be covered by the waters of any reservoirs so formed; to take land for that purpose; to maintain all necessary

pipes, pumps and aqueducts; to establish public reservoirs; to erect and maintain hydrants under the direction of the city council; to collect water rents and pay these rents to the treasurer of the district; to appoint directors of the public library; and to exercise any powers which may from time to time be conferred upon them by the district. The electors residing in the second taxing district were liable to taxation by the city to defray the burdens, expenses and liabilities existing against the district prior to the consolidation, and for any liabilities for which the district might become responsible under the act. 16 Spec. Laws 1046, No. 352 §§ 23, 24.

In the consolidation, the city of Norwalk was created out of independent municipalities which, although retaining a great deal of their independence, were also made interdependent on one another for many of the services provided by a municipality. Since 1913, there have been many special acts passed by the legislature amending this original charter and granting certain powers to the second taxing district. Through various special acts, the district has been authorized to issue water and refunding bonds (19 Spec. Laws 940, No. 471; 26 Spec. Laws 820, No. 179); to erect factory buildings on land owned or to be acquired by the district (18 Spec. Laws 251, No. 306); and to take and acquire water rights. 20 Spec. Laws 1064, No. 471. It was granted the exclusive right, together with the first taxing district, to supply water to the incorporated city of Norwalk. 20 Spec. Laws 1064, No. 471 § 2. It was given the right to acquire land on behalf of the district for parking purposes. 23 Spec. Laws 1103, No. 445. In 1965, the General Assembly authorized the second taxing district to issue water bonds, the proceeds of which are to be used for the purchase

of lands and rights of way to be acquired by the district for water purposes, by condemnation proceedings or otherwise. 32 Spec. Laws 135, No. 193.

The second taxing district, although a part of the city of Norwalk, has continued to possess many of the powers previously given by special act of the legislature to the city of South Norwalk.

Section 9-167a of the General Statutes (Rev. to 1964) does not define "political subdivision" of the state as it is used therein. We have, however, defined a similar phrase in the construction of § 7214 of the 1949 Revision of the General Statutes (now General Statutes § 49-41), which provided that before any contract exceeding $1000 for the construction of a public work of the state "or of any subdivision thereof" is awarded to any person, that person shall furnish to the state or subdivision a bond for the protection of persons supplying labor or materials for the work. "The word 'state' means 'a body of people occupying a definite territory and politically organized under one government.' *McLaughlin* v. *Poucher,* 127 Conn. 441, 447, 17 A.2d 767; see also *Terry* v. *Olcott,* 4 Conn. 442, 445. On this theory, the subdivision of a state would be a body of people less in number than the total number in the state, politically organized, and occupying a part of the territorial area of the state—hence a city, borough or town." *Norwalk* v. *Daniele,* 143 Conn. 85, 88, 119 A.2d 732. " 'The term "political subdivision" is broad and comprehensive and denotes any division of the State made by the proper authorities thereof, acting within their constitutional powers, for the purpose of carrying out a portion of those functions of the State which by long usage and the inherent necessities of government have always been regarded as public.' " *Com-*

*missioner of Internal Revenue* v. *Shamberg's Estate,* 144 F.2d 998, 1004 (2d Cir.) (quoting from 30 Opp. Atty. Gen. 252, 253 [U.S. 1914]); *Commissioner of Internal Revenue* v. *White's Estate,* 144 F.2d 1019, 1020 (2d Cir.).

Such definitions are merely illustrative of the interpretation of other statutes. We are concerned, in the instant case, with the intention of the legislature expressed in § 9-167a of the General Statutes (Rev. to 1964). The obvious purpose of the statute is to prevent a situation wherein a simple majority of the voters of one party can elect all its candidates, leaving a substantial minority of voters without an effective voice in government.[2] Section 9-167a applies to every "board, commission, committee, or similar body of the state or any political subdivision thereof, whether elective or appointive, except any such board, commission, committee or body whose members are elected on the basis of a geographical division of the state, or such political subdivision." The members of the board of district commissioners for the second taxing district are elected at large from the district and not on the basis of a geographical division thereof. The language of the statute is clear and unambiguous. The second taxing district of the city of Norwalk was and is a political subdivision of the state, and the provisions of § 9-167a applied to the election of the board of district commissioners in the second taxing district. Since the defendant is a member of the Democratic party and two other members of the same party were already serving as members of the board, it is our conclusion that the defendant is holding office illegally.

[2] Snyder & Pearson, "Effect of Malapportionment Cases on Political Subdivisions of the State," 39 Conn. B.J., 1, 21.

There is error, the judgment is set aside and the case is remanded with direction to render judgment in favor of the plaintiff, decreeing that the defendant be ousted and altogether excluded from membership on the board of district commissioners for the second taxing district of the city of Norwalk.

In this opinion the other judges concurred.