QUESTION: What conflict of interest rules or laws govern the members of the Hillsborough County Aviation Authority while acting in that capacity?
SUMMARY: The Hillsborough County Aviation Authority is, for the purposes of the Standards of Conduct Law, ss. 112.311- 112.318, F. S., and pursuant to s. 1.01(9), F.S., a "political subdivision" of this state, making the members of the authority subject to the provisions of the Standards of Conduct Law. The members of the authority are also subject to the standards of conduct prescribed in s. 8D, Ch. 59-1356, Laws of Florida, and to the rule of public policy that one cannot serve two masters, which rule prohibits public officers and employees from being interested in public contracts in which they are a party to the letting or otherwise serving in a dual agency capacity. There are several methods by which a conflict of interest may arise under the law of this state. Firstly, there may be a violation of the Standards of Conduct Law, ss. 112.311-112.318, F.S. Such a violation may occur if any officer or employee of a state agency or of a county, city, or other political subdivision of the state has any interest, financial or otherwise, direct or indirect, or engages in any business, transaction, or professional activity, or incurs any obligation of any nature, which is in substantial conflict with the proper discharge of his duties in the public interest. Section112.311. Presumably, the members of the Hillsborough County Aviation Authority (hereinafter referred to as the "authority") are not state, county, or city officers. However, your inquiry also indicates your belief that the members of the authority are not officers of any other political subdivision of the state, within the purview of the Standards of Conduct Law. In support of your apparent position, you draw my attention to Hillsborough County Aviation Authority v. Walden, 210 So.2d 193, 195 (Fla. 1968), in which it was stated that the authority is not a political division or subdivision of the state for purposes of property taxation and immunity therefrom. In that case, the court was interpreting its earlier ruling in Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571, 573 (Fla. 1957), that the property of the state and of a county — which is a political division of the state, pursuant to Art. VIII, s. 1, State Const. 1885 — is immune from taxation. Article VIII, s. 1, supra, provided that the state shall be divided into "political divisions called counties." Thus, for purposes of property taxation and immunity therefrom, the authority was not considered to be a political division of the state. Accord: Attorney General Opinion 073-246, stating that the authority is a separate and distinct entity from the government of Hillsborough County. (It should be noted that paragraph 1(c) of Rule 12B-1.207, Rules and Regulations of the State of Florida, Department of Revenue, Chapter 12B-1, now provides that, for purposes of property taxation and immunity therefrom, "political subdivisions" of the state include special tax districts. Attorney General Opinion 073-437.) With respect to the applicability of the Standards of Conduct Law to the instant situation, however, it must be initially and independently determined whether members of the authority are officers of a political subdivision of the state for the purposes of the Standards of Conduct Law. Important to such determination is the rule of statutory construction, established by s. 1.01(9), F.S., that wherever the context of the Florida Statutes will permit, the words "`political subdivision' include counties, cities, towns, villages, special tax school districts, bridge districts, and all other districts in this state." (Emphasis supplied.) It was on the basis of the foregoing definition that this office held in AGO 073-160 that a member of a water control district board of supervisors was subject to the Standards of Conduct Law. Compare AGO 073-8, in which it was stated that a mosquito control district is a political subdivision within the purview of s. 1.01(9), supra, and within the context of Florida's Sunshine Law; and AGO 071-171, holding to the same effect with respect to a park and recreation district. Likewise, in order to bring the authority within the purview of s. 1.01(9), supra, it is necessary to examine the authority's organizational characteristics. The authority was created as a "body corporate" to control, supervise, and manage all airports in Hillsborough County. Chapter 23339, 1945, Laws of Florida. In this regard, it was held in Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District, 82 So. 346, 350 (Fla. 1919), that the Everglades Drainage District, created with all the powers of a body corporate, "is a public quasi corporation, and as such, a governmental agency of the state for certain definite purposes, having such authority only as is delegated to it by law." An annual assessment of taxes was imposed by the enabling act upon all lands within the Everglades Drainage District in order to finance its operations. Chapter 6456, 1913, Laws of Florida, as amended by Ch. 6957, 1915, Laws of Florida. See also Rileigh v. Pinellas County, 200 So.2d 165 (Fla. 1967), in which it was stated that the County Free Public Libraries Act, ss. 150.01-150.08, F. S. (repealed by Ch. 71-14, Laws of Florida), created taxing districts for library purposes, to be financed by property tax levies authorized by the act and imposed by the counties. Similarly, the operations of the authority are financed in part by a tax on all taxable property in Hillsborough County. Section 11, Ch. 59-1356, Laws of Florida, supplementing and amending Ch. 23339, 1945, Laws of Florida. The Board of County Commissioners of Hillsborough County is required by s. 11, Ch. 59-1356, to levy such tax for the benefit of the authority following the authority's preparation of its own annual budget, the provisions of which may be changed by the county budget commission only as they relate to general administrative and operating expenses. As a result, I am of the opinion that s. 11, Ch. 59-1356, has the effect of making the authority a special taxing district, within the meaning of the phrase "all other districts" as used in s.1.01(9), supra. Such conclusion is consistent with the general characterization of a political subdivision as a division of a state created for the purpose of discharging some function of local government. See City of Miami v. Lewis, 104 So.2d 70 (3 D.C.A. Fla., 1958), in which it was stated that a municipal corporation is a statutorily created political subdivision of the state to the extent that attributes of sovereignty are exercised within a prescribed area and consistent with a municipality's grant of authority. See also State ex rel. Maisano v. Mitchell,231 A.2d 539, 542 (Conn. 1967); Arkansas State Highway Commission v. Clayton, 292 S.W.2d 77, 79 (Ark. 1956); McQuillin, Municipal Corporations (3d Ed.) s. 2.07, p. 134. Analogously, the authority is empowered generally to acquire, construct, and operate airports and other aviation facilities; to charge rates, fees, and rentals for airport services and facilities; to issue bonds for airports and aviation facilities; to exercise the power of eminent domain; and to have levied in its behalf a county tax on all taxable property within Hillsborough County. Sections 3, 11, Ch. 59-1356, supra. The authority performs these functions within the territorial area of Hillsborough County, two of the authority's members being elected officials of Hillsborough County, the remainder being residents of Hillsborough County appointed by the governor. Section 3, Ch. 23339, 1945, supra. Having thus concluded that the authority is a special taxing district and within the purview of political subdivision as defined in s. 1.01(9), supra, it is additionally necessary to determine whether the context of the Standards of Conduct Law will permit the application of such definition to the instant situation. As previously indicated, the Standards of Conduct Law applies to all officers and employees of "a state agency or of a county, city, or other political subdivision of the state." (Emphasis supplied.) Section 112.311, supra. Since counties and cities are specifically mentioned, they cannot be the "other political subdivisions" to which the law refers. Moreover, this office has generally considered members of special taxing districts and port authorities subject to the standards prescribed in the law. See AGO's 073-160, SC69-15, SC69-23, and 073-121. Further, the legislative intent expressed in s. 112.311 is that the law should serve as a guide for the official conduct of "public servants in this state." In sum, therefore, I am of the opinion that the authority is a "political subdivision" of the state within the purview and for the purposes of the Standards of Conduct Law, and that authority members must comply with the standards prescribed therein. A conflict of interest may also arise under certain provisions of Ch. 839, F.S. For example, s. 839.08, prohibits state or county officers from purchasing supplies or materials from themselves or from any firm in which they are interested. See also ss. 839.09 and 839.10. In the instant situation, as noted previously, the members of the authority are presumably not state or county officers for the purposes of Ch. 839, when acting in their capacity as authority members. Thus, strictly speaking, they are not bound by the specific requirements of the conflict-of-interest provisions of Ch. 839. However, s. 8D, Ch. 59-1356, Laws of Florida, amending and supplementing Ch. 23339, 1945, supra, applies similar requirements to the authority members, providing that [N]o member of the Authority or officer or employee thereof shall either directly or indirectly be a party to, or be in any manner interested in, any contract or agreement with the Authority for any matter, cause or thing whatsoever by reason whereof any liability of indebtedness shall in any way be created against such Authority. If any contract or agreement shall be made in violation of the provisions of this section the same shall be null and void and no action shall be maintained thereon against the Authority. Finally, the foregoing provisions of Ch. 59-1356, supra, and to a certain extent the Standards of Conduct Law, are merely declaratory of the time-honored rule of public policy that one cannot serve two masters. City of Miami v. Benson, 63 So.2d 916
(Fla. 1953); City of Coral Gables v. Weksler, 164 So.2d 260, 263
(3 D.C.A. Fla., 1964), aff'd mem., 170 So.2d 844 (Fla. 1964); AGO 073-215. This common-law principle has been interpreted to prohibit a public officer or employee from being in any manner interested in a contract for the performance of public work in which said officer or employee was a party to the letting; and to invalidate any transaction in violation of this principle. City of Miami v. Benson, supra at 920-921. Moreover, this principle, which discourages "dual agency" relationships, is still viable in Florida and is applicable to all those individuals holding positions of public trust, including the authority members in the instant situation.