[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Diane Dadiskos, appeals a decision of the defendant Connecticut Real Estate Commission, which revoked her real estate broker's license. The Commission acted pursuant to General Statutes 30-323. The appeal is authorized by 4-183. The court finds the issues in favor of the defendant Commission.
The essential facts are not in dispute. The plaintiff held a real estate broker's license during 1992. On June 15, 1992, the plaintiff pleaded guilty in the United States District Court, District of Connecticut, to three counts of violating Title 31:5324 and 31:5313(a), which make it a felony to structure financial transactions so as to avoid federal reporting requirements. The facts underlying the government's charges were that the plaintiff purchased for cash two cashier's checks from different banks, on consecutive days, each in the amount of $9,000. She admitted that her purpose was to avoid the federal reporting requirements for cash transactions in excess of $10,000.
The court sentenced the plaintiff to two years imprisonment, execution suspended, three years probation including a condition of community service work, and a monetary fine. The court, in due course, notified the defendant Commission. After a hearing, the Commission revoked the plaintiff's license, citing General Statutes 20-323 as the basis for its decision.
The plaintiff's principal contention on appeal is that the Commission misinterpreted the applicable statute, 20-323. That statute, in relevant part, reads as follows: CT Page 555
 Any licensee . . . convicted of a violation of any of the offenses enumerated in subdivision (8) of section 20-320 shall incur a forfeiture of his license. . . .
The statute further provides that "(a)pplication for reinstatement of such license . . . shall be subject to the provisions of section 46a-80. Section 46a-80 generally provides that a state agency must consider a number of factors, including rehabilitation potential, in connection with the licensure of persons convicted of a crime.
Section 20-320 reads, in relevant part, as follows:
 . . . The real estate commission . . . shall have the power temporarily to suspend or permanently to revoke any license . . . when . . . it finds . . . that the licensee is guilty of any of the following: . . . (8) conviction in a court of competent jurisdiction of this or any other state of forgery, embezzlement, obtaining money under false pretenses, larceny, extortion, conspiracy to defraud, or other like offense or offenses provided suspension or revocation under this subdivision shall be subject to the provisions of section 46a-80. . . .
The plaintiff makes a number of arguments attacking the Commission's interpretation of these statutes. First, she claims that the revocation of her license is subject to the provisions of 46a-80, citing 20-320. The flaw in this argument is that the Commission did not revoke the plaintiff's license pursuant to20-320; rather, the revocation was pursuant to 20-323. As indicated, when there has been a revocation under the latter statute, 46a-80 rehabilitation provisions come into play only upon the licensee's application for subsequent reinstatement.
The plaintiff focuses her main argument on the wording of subdivision (8) of 20-320. She argues that she was not convicted of a crime in a court "of this or any other state" but rather in a federal court. Therefore, she claims, the incorporation of that statute by reference in 20-323 limits the Commission in acting under 20-323 to revoking a license only for conviction in a state, not federal, court.
There are two reasons why the plaintiff's statutory CT Page 556 construction arguments may not be sustained. Section 20-323
requires revocation whenever a licensee has been "convicted of a violation of any of the offenses enumerated in subdivision (8) of section 20-320. . . ." Unlike 20-320 the language of 20-323 does not limit the conviction to a particular jurisdiction. Rather, the emphasis is on the nature of the crime and the fact of conviction in some court. A reasonable interpretation of 20-323, therefore, is that it requires automatic revocation whenever a licensee has been convicted in any court of an offense listed in the other statute. That is the interpretation adopted by the Commission, which is, of course, the agency charged with enforcing both of these statutes.
A second, independent, reason for rejecting the plaintiff's restrictive reading of these statutes is that our courts have given a more expansive interpretation of the term "other state" than the plaintiff would do. In McLaughlin v. Poucher, 127 Conn. 441
(1941), for example, the court considered the exemption from the Connecticut succession tax of a testamentary gift to a charity incorporated under federal law. The applicable statute provided an exemption in the case of gifts to charities "incorporated or organized under the laws of this state or of any state whose laws provide (reciprocal treatment)." The court noted that statutory provisions making exemptions from general laws imposing taxes are to be strictly construed. Id., 444. Nevertheless, the court held that the gift to the federally incorporated charity was entitled to the exemption. The court held that an expansive interpretation of the term "any state" was required in order to achieve the purpose of the statute, citing Terry v. Olcott, 4 Conn. 442 (1822) Id., 448-449.
In the present case, the obvious purpose of 20-323 is to protect the public by summarily removing from the real estate brokerage business those persons who have been convicted of crimes which indicate untrustworthiness in the handling of money. This purpose would obviously be frustrated if the statute were to be construed to exempt persons who have been convicted of such crimes solely on the basis that the conviction was obtained in federal rather than a state court. Indeed, such a result could only be described as bizarre, a result which this court must avoid. State v. Uretek, Inc., 207 Conn. 706, 719 (1988).
The plaintiff argues that the automatic revocation provisions of 20-323 are not applicable because the federal crime of which she was convicted is not "a like offense" to those specifically CT Page 557 enumerated in 20-320(8). The Commission interprets the term in question to encompass all crimes involving fraud or dishonesty in the handling of money. This is clearly a common element in the enumerated offenses, and the Commission's reading of the term is plainly reasonable. The plaintiff's crime contains the same element, and the Commission's conclusion that it is a "like offense" is, therefore, reasonable.
It is a familiar rule that the court's review of administrative agency action is quite limited. In this case, the action under review was based on the agency's interpretation of statutes which it is indisputably charged with enforcing. "Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement." Starr v. Commissioner of Environmental Protection,226 Conn. 358, 372 (1993). This does not mean that the court must abdicate its adjudicative function in interpreting the law, but it does mean that where there are two equally plausible interpretations of a statute the court must give due deference to that followed by the administrative agency concerned. Id., 376. As indicated, the court views the interpretation given to the statutes in question by the Commission to be completely reasonable in this case. The court is, therefore, obliged to defer to that interpretation notwithstanding the plaintiff's strong contentions to the contrary.
The plaintiff's final basis of appeal concerns a clipping of a newspaper article recounting her conviction. This was found in the Commission's files, and it is part of the record submitted by the Commission to the court in connection with this appeal. It was not, however, introduced in evidence at the administrative hearing. The plaintiff claims that this constitutes an ex parte communication prohibited by 4-181 and that its use by the Commission, unknown to the plaintiff, requires reversal of the Commission's decision, citing Martone v. Lensink, 215 Conn. 49
(1990) (Martone II); see also Martone v. Lensink, 207 Conn. 296
(1988) (Martone I).
Section 4-181(a) provides, in relevant part, that "no hearing officer or member of an agency who . . . is to render a final decision . . . shall communicate, directly or indirectly, in connection with any issue of fact, with any person or party . . . without notice and opportunity for all parties to participate." CT Page 558 Subsection (b) of the statute exempts from the prohibition communications between agency members and employees, thus permitting intra-agency discussions and exchange of information.
In order to require the reversal of an agency decision, a communication which is prohibited by 4-181 must be shown to have prejudiced substantial rights of the plaintiff. See 4-183(j). If the record shows a prima facie violation of the statute, however, a presumption of prejudice arises, and the burden of disproving that prejudice shifts to the agency. Martone I, supra.
In the present case, the final decision was rendered by the Commission after a hearing before six members, including the chairman. The only indication that a prohibited "communication" might have occurred is the presence of the newspaper clipping in the Commission's file. The clipping by itself is not a "communication" prohibited by the statute, although it may be evidence of one. Communication involves the interchange of thoughts and ideas between people. Martone I, supra, 302. The clipping would be a prohibited communication only if it had been given to a Commission member by someone other than another Commission member or employee. In this regard, the very nature of the item, a clipping from the Hartford Courant, a daily newspaper with probably the largest circulation in the state, available to everyone, reveals nothing of its source. There is no indication, in short, that someone other than a Commission member or employee put it in file. Nor is there any indication that someone other than a Commission member or employee discussed its contents with a Commission member. Furthermore, unlike the situation in the Martone case, there is no indication that any Commission member considered or even saw the clipping prior to rendering the final decision. In these circumstances, the court finds that a prima facie violation of 4-181 has not been established.
The court next considers the question of prejudice to the plaintiff. This is appropriate even if the news clipping was not provided to the Commission in an ex parte communication prohibited by 4-181. In this regard, 4-180(c) provides, in relevant part, that "(f)indings of fact shall be based exclusively on the evidence in the record and on matters noticed." The clipping was not made part of the record at the administrative hearing, nor was the plaintiff ever notified that the Commission would consider it in reaching its decision. The Commission plainly violated 4-180(c), therefore, if it based its decision, in whole or in part, on the clipping, regardless of how CT Page 559 the clipping was obtained. If such a statutory violation resulted in prejudice to substantial rights of the plaintiff, the court would be required to reverse the Commission's decision or remand the case. General Statutes 4-183(j).
The court has carefully considered the question of possible prejudice to the plaintiff's rights that might have occurred as a result of the Commission's consideration of the clipping without prior notice to the plaintiff and an opportunity to respond. The court concludes that, under the particular circumstances of this case, no such prejudice was possible. The clipping contains a report of the sentencing of her and her father in federal court "on tax and money laundering charges for trying to disguise the profits of their illegal gambling business." The report summarizes comments of the prosecuting attorney, and it may fairly be characterized as extremely unfavorable to the plaintiff. The article would obviously have been prejudicial to the plaintiff if its contents could have had any legal effect on the Commission's decision. However, as indicated above, that was not the case here. Section 20-323, which provided the statutory basis for the decision revoking the plaintiff's license, does not afford any discretion to the Commission when a licensee has been convicted of a relevant offense. The unfavorable contents of the news article, therefore, could have had no legal effect, one way or another, on the Commission's decision. The Commission was required to revoke the plaintiff's license as a result of the conviction, regardless of the circumstances that led to that conviction. For these reasons, the court concludes that the plaintiff was not prejudiced, as a matter of law, even if in fact the Commission illegally considered the news article.
The foregoing discussion assumes, for the sake of the argument, that the Commission members who rendered the final decision in this case had the news article before them during the course of their deliberations. There is scant evidence on the point, however, and the court makes no finding of fact in this regard.
In summary, the court finds that the defendant Commission correctly applied the provisions of General Statutes 20-323 to the undisputed facts in this case. The court further finds that substantial rights of the plaintiff were not prejudiced in this case even if the defendant Commission violated 4-180(c) or 4-181, as alleged. CT Page 560
The appeal is dismissed.
Maloney, J.