## DORIS BLANCO *v.* HELEN D. GANGLOFF ET AL.

SUPERIOR COURT      HARTFORD COUNTY      FILE NO. 37297

Memorandum filed February 10, 1970

*Washton, Traystman, Scott & Kanabis,* of New London, for the plaintiff.

*Edmund J. Eshenfelder,* of New London, for the defendants Helen D. Gangloff and Grace M. Podeszwa.

*Merrill S. Dreyfus,* of New London, for the defendant Maryclare Granata.

KLAU, J. This is an application claiming that the defendant Helen D. Gangloff, as chief moderator, and the defendant Grace M. Podeszwa, as city clerk,

erred in declaring and certifying Maryclare Granata as having been elected to the board of selectmen of the city of New London at a municipal election held in that city on November 4, 1969, to take effect December 1, 1969, and that the plaintiff should have been declared to have been elected to the board of selectmen at that municipal election. This action apparently has been brought pursuant to § 9-328 of the General Statutes.

An amended petition was filed, the allegations of which the defendants admitted except for a paragraph which set forth the claims of the plaintiff. The petition alleges in part:

"On November 4, 1969, a municipal election was held in the City of New London wherein there was an election for all members of the Board of Selectmen, a board consisting of three members. Said Board of Selectmen is an elective body elected every two years on the first Tuesday following the first Monday in November to take office on the first Monday of December following such election. The City of New London is a municipal corporation of the State of Connecticut. The Board of Selectmen which . . . [was purportedly] elected on November 4, 1969 to take office on December 1, 1969 is to be composed of three members and each voter in the City of New London is entitled to vote for any three persons nominated in accordance with the Charter of said city for such office. The following was the result of said election for the Board of Selectmen, showing the names of the candidates, their political party and the total number of votes received:

| "Name of Candidate | Party Affiliation | Total Number of Votes Received |
|---|---|---|
| Anthony Maiorano | Democrat | 3939 |
| Richard L. Sheflott | Democrat | 3920 |
| Doris A. Blanco | Democrat | 3459 |

Maryclare Granata ...Republican ........ 2999
Katherine M. Muller ..Republican ........ 2974
Spencer A. Kloter ....Republican ........ 2872

"The Chief Moderator for said election, Helen D. Gangloff, of New London, Connecticut, and/or Grace M. Podeszwa of New London, Connecticut, the City Clerk of said New London, have declared and/or certified the following individuals to have been elected to the Board of Selectmen for the term of office to commence December 1, 1969, to wit:

| "Name | Party Affiliation |
| --- | --- |
| Anthony Maiorano | Democrat |
| Richard L. Sheflott | Democrat |
| Maryclare Granata | Republican" |

The plaintiff claims that in declaring and certifying Maryclare Granata as having been elected to the board of selectmen of the city of New London, the defendants have erred in that (a) the declaration and/or certification are contrary to the charter of the city of New London; (b) if the declaration and/or certification are based on § 9-167a of the General Statutes, that section does not apply in that it is unconstitutional.

I

The plaintiff claims that the charter of the city of New London and other provisions of the General Statutes take precedence over § 9-167a of the General Statutes, commonly known as the minority representation statute, pursuant to which both the moderator and the city clerk declared Maryclare Granata elected to the board of selectmen even though she received a lesser number of votes at the municipal election held on November 4 than did the plaintiff. Section 9-167a provides:

"(a) The maximum number of members of any board, commission, committee or similar body of the

state or any political subdivision thereof, whether elective or appointive, except any such board, commission, committee or body whose members are elected on the basis of a geographical division of the state or such political subdivision, who may be members of the same political party shall be as specified in the following table:

| "COLUMN I | COLUMN II |
|---|---|
| Total Membership | Maximum from one Party |
| 3 | 2 |
| 4 | 3 |

. . . . .

". . . (c) In the case of any election to any such body the winner or winners shall be determined as under existing law with the following exception: The town clerk shall prepare a list of the candidates ranked from top to bottom according to the number of votes each receives; when the number of members of any one political party who would be elected without regard to this section exceeds the maximum number as determined under subsection (b) of this section, only the candidates of such political party with the highest number of votes up to the limit of such maximum shall be elected, and the names of the remaining candidates of such political party shall be stricken from the list. The next highest ranking candidates shall be elected up to the number of places to be filled at such election. . . ."

The applicable charter provisions of the city of New London are to be found in § 18 of Special Act No. 330 of the 1921 session of the General Assembly, as amended by Special Act No. 123 of the 1957 session; 18 Spec. Laws 719 § 18, as amended, 28 Spec. Laws 145 § 2; and § 11 of Special Act No. 378 of the 1965 session, amending what was originally § 78 of the 1921 act. 18 Spec. Laws 736 § 78, as amended,

32 Spec. Laws 395 § 11. Section 18 reads as follows: "The candidates for any office in any city election, in number equal to the places to be filled in any office, who receive the highest number of votes shall be declared elected. . . ." Section 9-167a of the General Statutes and the terms thereof are stated to be applicable to the state or any political subdivision thereof. The section was adopted in 1959, subsequent to the adoption of the special act incorporating the provisions of § 18 of the charter of the city of New London, and purports to cover the entire subject to which it relates; thus it will be held to repeal by implication all prior statutes on the matter, whether general or special. *Hutchison* v. *Hartford,* 129 Conn. 329, 332; *Young's Appeal,* 92 Conn. 516, 518. And when the language is clear and unambiguous, there is no occasion to resort to other means of interpretation. *State* v. *Mele,* 125 Conn. 210, 214; *Watrous* v. *Connelly,* 141 Conn. 257, 263; *State ex rel. Cooley* v. *Kegley,* 143 Conn. 679, 683; *Little* v. *United Investors Corporation,* 157 Conn. 44, 48. Further, the legislature is always presumed to know all existing statutes and to have in mind the effect its act or nonaction will produce. *State ex rel. Judson* v. *County Commissioners,* 68 Conn. 16, 23. A further rule of statutory construction is that "a legislative enactment should be so construed that no clause, sentence or word is superfluous, void or insignificant." *Great Atlantic & Pacific Tea Co.* v. *Scheuy,* 148 Conn. 721, 723. This rule has particular significance in reference to subsection (e) of § 9-167a in its reference to permitting a greater minority representation by general or special act, thus, by implication, barring any lesser minority representation or greater majority representation.[1]

---

[1] "Sec. 9-167a. MINORITY REPRESENTATION. . . . (e) Nothing in this section shall be construed to repeal or modify any general or special act which provides for a greater degree of minority representation than is provided by this section. . . ."

In this connection, it might be well to note the legislature's intent by adverting to the wording of subsection (c) of § 9-167a, referred to above: "In the case of any election to any such body the winner or winners shall be determined as under *existing law* with the following exception: . . . ." (Italics supplied.) Then follows the technique for providing minority representation. This in and of itself indicates that the "overriding desire of the General Assembly to compel minority representation by limiting the number of members of any one political party on any municipal body 'whether elective or appointive' is clear and obvious." *State ex rel. Bennett* v. *Glynn,* 154 Conn. 237, 242; *State ex rel. Maisano* v. *Mitchell,* 155 Conn. 256, 264. "Section 9-167a was designed to limit the normal right of the electors to elect all the members of one political party to every office if it obtains a majority." *State ex rel. Chapman* v. *Tinker,* 25 Conn. Sup. 436, 442.

Section 11 of Special Act No. 378 of the 1965 session of the General Assembly provides as follows: "Three selectmen shall be elected at each regular city election to serve a term of two years, after the first Monday in December next succeeding their election and until their successors are chosen and qualified. . . ." This section dropped the 1957 wording of § 18 of the charter, which spoke of those receiving "the highest number of votes," and thereby is in full accord with § 9-167a of the General Statutes, which effectively had nullified the 1957 special act (§ 18 of the charter).

The plaintiff claims that § 9-7 of the General Statutes exempts the charter provisions from the operation of § 9-167a. Section 9-7 provides: "No provision of this title or the sections listed in section 9-1 shall be construed to repeal any charter provision in existence on May 14, 1953, relative to the election,

term of office or powers or duties of any municipal officer . . . ." This section was adopted in 1953, and this, too, must be construed in the light of the intent of the legislature in enacting § 9-167a in 1959. There is no reason for giving more weight to § 9-7 of the General Statutes than to the special act from which § 18 of the charter is derived, since both were adopted prior to the adoption of § 9-167a.

It is the opinion of the court, therefore, that § 9-167a of the General Statutes supersedes § 18 of the charter; and, therefore, the defendants did not err in certifying and/or declaring the election of Maryclare Granata as a member of the board of selectmen of the city of New London, unless § 9-167a is found to be an unconstitutional exercise of legislative authority.

## II

The plaintiff claims that the principle "one man, one vote," derived from the equal protection clause contained in the fourteenth amendment to the constitution of the United States, is violated by § 9-167a of the General Statutes and that the section gives a person voting for a minority candidate greater weight than a person voting for a majority candidate. In a series of cases which began with *Baker* v. *Carr,* 369 U.S. 186 (1962), *Gray* v. *Sanders,* 372 U.S. 368 (1963), *Wesberry* v. *Sanders,* 376 U.S. 1 (1964), *Reynolds* v. *Sims,* 377 U.S. 533 (1964), *Sailors* v. *Board of Education,* 387 U.S. 105 (1967), and *Avery* v. *Midland County,* 390 U.S. 474 (1968), the Supreme Court of the United States has reaffirmed this principle, but its application to date has been confined to bodies which have legislative functions.

In *Montano* v. *Lee,* 401 F.2d 214 (1968), involving the application of the Connecticut minority representation statute to the aldermen-at-large elec-

tion of the city of New Haven, the court held that the statute affording minority party representation was not applicable to election of general legislative bodies but did cover boards of tax review, boards of finance, zoning commissions, library committees, and similar bodies whose legislative powers, if any, are strictly circumscribed. The court thus avoided a decision on the constitutionality of the statute and the applicability of the equal protection clause of the constitution.

In *Sailors* v. *Board of Education,* supra, 111, the Supreme Court of the United States ruled that the equal protection clause was not applicable to appointments to administrative boards. The plaintiff's counsel claims that the Supreme Court in *Sailors* indicated that elections to administrative boards would fall under the "one man, one vote" principle. A reading of the case does not sustain the plaintiff's contention. It was only an assumption by way of argument, made by the court in making its ruling that, whatever might be the situation with respect to an election, the equal protection clause was not violated insofar as an appointment to an administrative board was concerned. Consequently, there has been no ruling by the highest court as to whether the equal protection clause is applicable to the election of a purely administrative body such as is to be found here with respect to the board of selectmen of the city of New London. The powers of that board, entirely administrative, involving no legislative functions, are limited solely to the duties which are required of selectmen under the constitution of this state, and the statutes supplementing it, in the making of voters and in other purely administrative duties. Under the charter of the city of New London, the selectmen have no legislative duties. New London Charter § 79 (1961); 18 Spec. Laws 736, No. 330 § 79.

The evil that the Supreme Court of the United States sought to eradicate by its decision in *Baker v. Carr,* supra, and cases following it, was the actual securing by a minority, under various state constitutions and statutes, of a majority in the legislative halls of the state or its political subdivisions. Clearly, § 9-167a limits the rights of the majority, but it also secures minority representation for a minority. It is, in essence, a broad effort at proportional representation, although not on any exact basis or scientific ratio. A minority of 10 percent may be securing greater representation under the statute than they might obtain under a more scientific proportional representation statute. On the other hand, absent the statute, a majority may be exercising far more weight by being permitted to take all of the offices by polling only 51 percent of the vote. It cannot be said that there is anything essentially undemocratic about the principle of minority representation when applied to a purely administrative body. See Snyder & Pearson, "Effect of Malapportionment Cases on Political Subdivisions of the State," 39 Conn. B.J. 1, 25.

The plaintiff submitted a decision of the United States District Court, Southern District of New York, *Oliver* v. *Board of Education,* 306 F. Sup. 1286 (1969), holding as invalid and as violating the equal protection clause of the United States constitution the statutory method of election to the permanent school board of New York City wherein each borough elected one member to the permanent board, because the differential of population in each borough differed so widely. The decision recognizes that the Supreme Court of the United States had never passed on this question as to whether the equal protection clause was applicable in the election to a board without legislative functions. Consequently, the *Oliver* decision, although of interest, is not con-

trolling. It should be noted that *Hadley* v. *Junior College District,* 432 S.W.2d 328 (Mo. 1968), is now pending before the Supreme Court of the United States. See 393 U.S. 1115 (probable jurisdiction noted). In *Hadley,* the Supreme Court of Missouri ruled that the equal protection clause was not applicable to the election of trustees to the defendant Junior College, a public body exercising purely administrative functions.[2]

In *Hoblitzelle* v. *Frechette,* 156 Conn. 253, which involved the same election of the New Haven board of aldermen, our Supreme Court, on questions reserved to it, declined to answer any of the questions, including one requesting its opinion as to the constitutionality of § 9-167a.

Finally, in considering the constitutionality of § 9-167a, the following should be recognized: "Courts in passing upon the validity of a legislative Act do not feel justified in declaring a law void, unless there is a 'clear and unequivocal breach of the Constitution, not a doubtful and argumentative implication.' . . . 'It is our duty to approach the question with great caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the Act unless its invalidity is, in our judgment, beyond a reasonable doubt.' " *State* v. *Lay,* 86 Conn. 141, 145. "Nor can we impute to the General Assembly an intent to pass an invalid act or antagonistic legislation. *Wilson* v. *West Haven,* 142 Conn. 646, 656. Moreover, '[a]n intent on the part of the legislature to enact a law of such doubtful constitutionality is not readily to be in-

[2] Although the Supreme Court of Missouri was reversed; *Hadley* v. *Junior College District,* 397 U.S. 50; it has been pointed out that that case involved representation based on districts unequal in population, whereas the present case involves an election at large of a purely administrative board.

ferred.' *Antman* v. *Connecticut Light & Power Co.,* 117 Conn. 230, 237. Furthermore, this court should declare a statutory provision unconstitutional only upon the clearest grounds; particularly is this so where the statute turns on what is 'reasonable.'" *State* v. *Procce,* 5 Conn. Cir. Ct. 637, 642.

Hence, the conclusion of this court is that § 9-167a is valid and constitutional in its application to the board of selectmen of the city of New London.

Judgment may be entered for the defendants, dismissing the petition of the plaintiff.