## VAL DUMAIS ET AL. *v.* DAVID UNDERWOOD ET AL.
(AC 16291)

O'Connell, C. J., and Foti and Hennessy, Js.

---

784

Argued December 2, 1997—officially released February 24, 1998

*Leslee B. Hill* and *Edward C. Krawiecki,* with whom, on the brief, was *Robert A. Ziegler,* for the appellants (defendants).

*Timothy C. Moynahan,* for the appellees (plaintiffs).

Opinion

FOTI, J. The defendants[1] appeal from the judgment of the trial court rendered in favor of the plaintiffs[2] in

---

[1] The defendants are David Underwood, Thomas Arcari, Reade Clemens, Vincent Riera, Joseph Plourde, George Fensick and Gloria Saucier.

[2] The plaintiffs are Val Dumais and Gregory Granger.

this action brought in the nature of a quo warranto challenging the appointment of the defendants to the charter revision commission of the town of Plainville. The defendants claim that the trial court lacked subject matter jurisdiction to hear the quo warranto action. In the alternative, they argue that the trial court improperly (1) determined that a quo warranto action is the appropriate method to challenge the defendants' appointment, (2) determined that the town charter is controlling with respect to the number of votes required to appoint members to the commission, (3) determined that the defendants' actions were invalid and without force and effect, and (4) removed the defendants from the commission. We affirm the trial court's judgment.

The parties stipulated to the following facts. The plaintiffs are taxpayers and electors of the town of Plainville, and the seven defendants have been acting as members of a charter revision commission of that town. The defendants hold their office solely by virtue of a vote of the seven members of the town council that took place at a special meeting of the council on May 28, 1996. Only four members of the town council voted in favor of the resolution appointing the defendants as commission members.

In February, 1996, a prior commission, whose members had been appointed by five affirmative votes of the town council, filed a report recommending certain charter revisions requested by the council. The report did not recommend certain other revisions requested by the council. The council rejected the entire report. The council's May 28, 1996 resolution appointing the defendants as commission members also directed the defendants to reconsider certain charter provisions that the prior commission had considered in its February report and had recommended not be changed.

At the May 28, 1996 special meeting of the town council, the town attorney advised the council that five

affirmative votes were required to adopt the resolution naming the defendants as commission members. The validity of the defendants' appointment was questioned publicly at the May 28, 1996 meeting of the town council and was the subject of articles in newspapers of general circulation in Plainville.

Plainville's town charter was originally adopted on May 19, 1959, and became effective in October, 1959. Each of the previous ten charter revision commissions was initiated by the town council and was established by resolutions approved by the affirmative vote of at least five council members.

On June 6, 1996, the defendants established a schedule of meetings pursuant to which their final meeting would be held on Saturday, July 13, 1996. Subsequently, the defendants advanced the schedule of meetings so that their second public hearing would be conducted on July 8, 1996. On July 9, 1996, the defendants delivered their July 8, 1996 draft report of proposed charter changes to the Plainville town clerk. The town council scheduled a public hearing on this draft report for August 19, 1996. The parties agree that all of the actions of the defendants, including their July 8, 1996 draft report, are null and void and of no legal effect, unless the defendants were duly appointed to the office of charter revision commission.

The trial court determined that (1) the town charter requires five affirmative votes of the town council to appoint persons to the charter revision commission, and (2) because the defendants were appointed by only four affirmative votes, their appointment and their subsequent actions are null and void. The trial court ordered the defendants removed from office and found, in accordance with the parties' stipulation, that any official acts undertaken by the defendants since June

14, 1996,[3] are invalid and without the force and effect of law.

I

The defendants first argue that the trial court lacked subject matter jurisdiction because the plaintiffs could not, as a matter of law and fact, state a cause of action in quo warranto. The defendants argue that a quo warranto action is designed to prevent the usurpation of a public office "legally authorized and constituted" and that the office of charter revision commissioner does not come into legal existence until the members of the commission are appointed. Thus, the defendants claim that the office comes into existence concurrent with the appointment of the commissioners and terminates with the town council's acceptance or rejection of the commission's final report. The defendants claim that the present case is not an action to prevent the defendants' usurpation of the office of charter revision commissioner, but rather is a challenge to the creation of the office itself.

"[W]here a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." *Killingly* v. *Connecticut Siting Council*, 220 Conn. 516, 522, 600 A.2d 752 (1991). "Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy." (Internal quotation marks omitted.) *Toise* v. *Rowe*, 44 Conn. App. 143, 146, 687 A.2d 557, rev'd on other grounds, 243 Conn. 623, 707 A.2d 25 (1998).

[3] The plaintiffs filed their complaint in the nature of a quo warranto on June 14, 1996.

A complaint in the nature of a quo warranto may be brought "[w]hen any person . . . usurps the exercise of any office . . . [and] the Superior Court may proceed . . . to punish such person . . . for such usurpation, according to the course of the common law and may proceed therein and render judgment according to the course of the common law." General Statutes § 52-491. "A quo warranto proceeding under the common law lies only to test the defendant's right to hold office de jure." *Cheshire* v. *McKenney,* 182 Conn. 253, 256, 438 A.2d 88 (1980). In such an action, the burden is on the defendant to show, by a preponderance of the evidence, a complete title to the office in dispute. *Deguzis* v. *Jandreau,* 27 Conn. App. 421, 424, 606 A.2d 52 (1992). The title to be challenged in a quo warranto proceeding must be to a public office. *State ex rel. Stage* v. *Mackie,* 82 Conn. 398, 400, 74 A. 759 (1909).

The office of charter revision commission member is established pursuant to General Statutes § 7-188 (b).[4] Even if we were to assume, arguendo, that the office does not come into legal existence until its members are appointed, it is irrelevant. Because a quo warranto proceeding seeks to test the defendants' legal right to hold office, the plaintiffs properly brought an action in the nature of a quo warranto to challenge the legality of the defendants' appointment to the charter revision commission. See *Alcorn, State's Attorney, ex rel. Hoerle* v. *Thomas,* 127 Conn. 426, 428, 17 A.2d 514 (1941). The Superior Court, therefore, did not lack subject matter

---

[4] General Statutes § 7-188 (b) provides: "Any action [to adopt or amend a charter of a municipality] shall be initiated by a resolution adopted by a two-thirds vote of the entire membership of the appointing authority of such municipality, or by petition filed with the clerk of such municipality for submission to the appointing authority and signed by not less than ten per cent of the electors of such municipality, as determined by its last-completed registry list; provided, in the case of a consolidated town and city having a town clerk and a city clerk, such petition shall be filed with the city clerk."

jurisdiction to hear and determine this quo warranto action.

## II

The defendants next allege that the trial court improperly determined that a quo warranto action was the appropriate method to challenge the defendants' appointment to the charter revision commission. Alternatively, the defendants claim that the plaintiffs failed to allege and prove the existence of a public office being usurped by the defendants and, therefore, have not set forth a prima facie case in quo warranto.

Our review of the record reveals that the defendants did not challenge the plaintiffs' proceeding under the quo warranto statute, did not move to dismiss for failure to make out a prima facie case, and did not specifically raise either of these claims before the trial court. Nevertheless, the defendants argue that we should review their unpreserved claims because (1) the trial court made a determination that quo warranto was an appropriate remedy, and (2) they raised the issues in their amended statement of issues, thereby apprising the plaintiffs of the issues. The defendants also argue that we should consider their claims in the interest of the public welfare or of justice between the parties. See *Kavanewsky* v. *Zoning Board of Appeals*, 160 Conn. 397, 401, 279 A.2d 567 (1971). We do not agree.

While the record before us may be adequate for our review; see *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 507, 636 A.2d 1342 (1994) (invoking supervisory power of court to review unpreserved claim where record adequate); we decline to review this claim, raised for the first time on appeal, because we do not deem it to be one in the interest of the public welfare or necessary for justice between the parties. We are not bound to consider a claim unless it was distinctly raised at the trial or arose subsequent

to the trial. Practice Book § 4061; see also *Dept. of Public Safety* v. *Freedom of Information Commission*, 242 Conn. 79, 91, 698 A.2d 803 (1997); *Skrzypiec* v. *Noonan*, 228 Conn. 1, 13, 633 A.2d 716 (1993).

## III

The defendants next claim that the trial court improperly determined that since the Home Rule Act (act), General Statutes §§ 7-187 through 7-201, sets forth the specifics regarding the appointment, membership, duties, report and termination of a charter revision commission, but is silent as to the number of affirmative votes required to adopt a resolution appointing commission members, the town's charter is controlling on that issue.

"Under the act, municipalities have the power to adopt a charter to serve as the organic law of that municipality. General Statutes § 7-188 (a); *Caulfield* v. *Noble*, 178 Conn. 81, 86, 420 A.2d 1160 (1979). It is well established that a [town's] charter is the fountainhead of municipal powers. *State ex rel. Raslavsky* v. *Bonvouloir*, 167 Conn. 357, 362, 355 A.2d 275 (1974). The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised." (Internal quotation marks omitted.) *Windham Taxpayers Assn.* v. *Board of Selectmen*, 234 Conn. 513, 529, 662 A.2d 1281 (1995). Our Supreme Court has stated that "to achieve the goal of local autonomy over issues of local concern, [courts do] not 'apply a strict construction to the home rule legislation, because to do so would stifle local initiative . . . .' " Id., 535, quoting *Norwich* v. *Housing Authority*, 216 Conn. 112, 116, 579 A.2d 50 (1990). "[H]ome rule legislation was enacted to enable municipalities to conduct their own business and control their own affairs to the fullest possible extent in their own way . . . ." (Internal quotation marks omitted.) *Caulfield* v. *Noble*, supra, 87.

The trial court concluded that § 7-188 (b) addresses a municipality's initiation of action to amend its charter and not the number of votes required to appoint members to the charter revision commission. The court determined that because the plaintiffs challenged only the second stage of the charter amendment process, § 7-188 (b) was irrelevant to its decision. The court further determined that it is only when the town council has moved beyond the initiation process contemplated by § 7-188 (b) that the second stage begins with the appointment of the charter revision commission members. Moreover, since General Statutes §§ 7-190[5] and 7-193[6] provide the exclusive statutory guidance as to the

[5] General Statutes § 7-190 provides: "Commission: Appointment, membership, duties, report, termination. (a) Within thirty days after such action has been initiated by vote of the appointing authority or by certification of a petition, the appointing authority shall by resolution appoint a commission consisting of not fewer than five nor more than fifteen electors, not more than one-third of whom may hold any other public office in the municipality and not more than a bare majority of whom shall be members of any one political party, which commission shall proceed forthwith to draft a charter, or amendments to the existing charter, or amendments to the home rule ordinance, as the case may be.

"(b) The appointing authority shall direct the commission to consider those recommendations included in the petition and may make other recommendations to the commission. The commission may also consider other items for inclusion in the proposed charter, other changes to the charter or home rule ordinance and such other items as it deems desirable or necessary. The commission shall in its reports comment on each recommendation which it has been directed to consider, if any, and on such other changes or items. The appointing authority shall specify by resolution when the commission shall submit its draft report, which shall be not later than sixteen months from the date of its appointment.

"(c) The commission shall terminate upon acceptance or rejection of its final report by the appointing authority."

[6] General Statutes § 7-193 provides in relevant part: "(b) Every municipality shall have all municipal officers, departments, boards, commissions and agencies which are required by the general statutes or by the charter. Each municipality may have any municipal officers, departments, boards, commissions and agencies which are specifically allowed by the general statutes or which are necessary to carry out any municipal powers, duties or responsibilities under the general statutes. *All such officers, departments, boards, commissions and agencies shall be elected, appointed and organized in*

process for appointing members to the commission, and since those sections are silent as to the requisite number of votes, the language of the town's charter[7] is controlling.

We agree with the trial court's determination and, because Plainville's charter requires five affirmative votes of the town council for the adoption of any resolution, ordinance or vote, the adoption of the resolution to appoint the defendants by only four affirmative votes renders their appointment and their subsequent actions null and void.

We see no conflict between the provisions of the Home Rule Act and the town charter. The trial court's determination is supported by § 7-193 (b) of the act, which provides that "[e]ach municipality may have any . . . commissions . . . which are specifically allowed by the general statutes or which are necessary to carry out any municipal powers, duties or responsibilities under the general statutes. All such . . . commissions . . . shall be elected, appointed and organized in the manner provided by the general statutes, *except as otherwise provided by the charter or by ordinances or resolutions adopted pursuant to such charter. Any*

*the manner provided by the general statutes, except as otherwise provided by the charter or by ordinances or resolutions adopted pursuant to such charter. Any municipality may, by charter or by ordinances or resolutions adopted pursuant to such charter, alter the method of election, appointment or organization of any or all of such officers, departments, boards, commissions or agencies, including combining or separating the duties of each, unless specifically prohibited from making such alteration by the constitution or the general statutes."* (Emphasis added.)

[7] Chapter three, § 5, of the Plainville charter provides in relevant part: "The Council shall determine its own rules of procedure not inconsistent with the provisions of this Charter. The presence of five members shall constitute a quorum but *no ordinance, resolution or vote,* except a vote to adjourn or to fix the time and place of its next meeting, *shall be adopted by less than five affirmative votes* and the ayes and noes of each vote shall be recorded in the journal. No ordinance or resolution shall be adopted or appointment or removal made except in a meeting of the Council open to the public." (Emphasis added.)

*municipality may, by charter or by ordinances or resolutions adopted pursuant to such charter, alter the method of election, appointment or organization of any or all of such . . . commissions . . . unless specifically prohibited from making such alteration by the constitution or the general statutes."* (Emphasis added.) It is evident that the legislature, in enacting the Home Rule Act, "intended to give 'home rule towns' the freedom to retain aspects of special acts and charters suited to particular local needs and practices. *Caulfield* v. *Noble,* [supra, 178 Conn. 90.]" *Sansone* v. *Clifford,* 219 Conn. 217, 223, 592 A.2d 931 (1991). In accordance with the act, the manner in which members are appointed to a charter revision commission is a matter of local concern governed by the town's charter, unless specifically prohibited by the constitution or General Statutes.[8]

## IV

Finally, the defendants claim that the trial court improperly (1) determined that their actions were invalid and without force and effect and (2) removed them from the commission. For the reasons previously stated, we conclude that the trial court properly adhered to the stipulation of the parties after concluding that the defendants were not duly appointed to the office of charter revision commission.

The judgment is affirmed.

In this opinion the other judges concurred.

[8] The Home Rule Act neither specifically provides for the number of affirmative votes necessary to adopt a resolution appointing members to a charter revision commission nor specifically prohibits municipalities from altering, by charter, the method of election of commission members. See, e.g., General Statutes § 7-188 (b) (two-thirds vote of entire membership of appointing authority required for charter revision); General Statutes § 7-191 (d) (majority vote of entire membership of appointing authority required to approve proposed charter revisions contained in commission's final report); General Statutes § 7-191 (e) (majority vote of entire membership of appointing authority required to determine whether proposed charter revisions shall be submitted to electors for approval or rejection).