ROBINSON, J.
**760 In this appeal, we consider how a town charter provision that controls the filling of vacancies on that town's board of selectmen relates to General Statutes § 9-222,[1] which provides a statutory **761 procedure for filling such vacancies, in light of the home rule principles that govern the relationship between municipalities and the state. The defendants town of Fairfield (town) and its Board of Selectmen (board)[2] appeal[3] from the judgment of the trial court granting an application by the plaintiffs, five individual electors of the town,[4] for a writ of mandamus ordering *256 a special election for a vacant seat on the board. On appeal, the defendants claim, inter alia, that article VI, § 6.3 (B), of the Fairfield Town Charter (charter),[5] which does not provide for a special election when the board has acted to fill a vacancy within thirty days, is controlling over § 9-222, which contemplates the possibility of a petition for a special election to fill such a vacancy even after the board has acted, and that, therefore, the trial court improperly issued a writ of mandamus compelling a special election in the present case. We agree with the defendants and, accordingly, reverse the judgment of the trial court. **762 The record, including a joint stipulation of the parties, reveals the following undisputed facts and procedural history. In November, 2015, Michael C. Tetreau, Christopher W. Tymniak, and Laurie McArdle were elected to the board for a four year term commencing on November 20, 2015, and ending on November 20, 2019. McArdle, a member of the Republican Party, subsequently resigned from the position of selectman, effective December 1, 2016. On December 7, 2016, Tetreau and Tymniak, as the remaining selectmen, appointed Edward Bateson III, who is also a member of the Republican Party, to serve out McArdle's remaining term.
Subsequently, numerous electors in the town, including the plaintiffs; see footnote 4 of this opinion; filed petitions with Elizabeth Browne, the town clerk, "request[ing] that the vacancy in the office of [s]electman ... be filled by a special election in accordance with [ § 9-222 ]." On January 9, 2017, Browne certified that those petitions collectively contained signatures of more than 5 percent of the town's electors. Browne then requested advice from Stanton Lesser, the town attorney, about whether the statutes providing for a special election were applicable because the board had filled the vacancy by appointment within thirty days, as required by § 6.3 (B) of the charter. Lesser responded with a letter to Browne, opining that a special election was necessary. On January 9, 2017, Browne notified the board of the certified petitions and proposed a special election date of June 6, 2017.
The minutes of the board's January 25, 2017 meeting included a resolution, approved by the Office of the Secretary of the State (Secretary), scheduling the special election for June 6, 2017, in accordance with General Statutes §§ 9-164 and 9-222. At the meeting, Tymniak amended that resolution (1) to conclude that, "pursuant to the plain meaning of [§ 6.3 (B) of the charter] there is no need to fill a vacancy on the [board] in **763 accordance with the procedure set forth in [c]hapter 146 of the General Statutes because it was filled by the [remaining selectmen] within [thirty] days," and (2) to declare the petitions for a special election to be "void ab initio insofar as no such special election is required or appropriate under the clear and plain meaning of [the charter]." The board then voted two to one in favor of the amended *257 resolution, thus refusing to set a date for the special election.
Lesser then requested an opinion from the Secretary, pursuant to General Statutes § 9-3, concerning whether the town was "legally obligated to hold a special election for the position of [s]electman, said position being ... vacated by [McArdle], who was replaced with ... Bateson by the remaining two selectmen." Lesser apprised the Secretary about the dispute with respect to the effect of the charter. By letter dated January 30, 2017, Attorney Theodore Bromley issued an opinion, on behalf of the Secretary, concluding that, under § 9-222, Browne was "required to 'call' a special election for the office of [s]electman," which would be held "in accordance with the provisions of ... § 9-164," thus requiring the board "to establish a date for the special election ... which cannot be later than [150 days] following the filing of the petitions submitted." That letter did not, however, mention the charter. Following subsequent communications with a representative of the Republican town committee, Bromley declined to amend the January 30 letter, stating that the Secretary's interpretive authority is limited to statutes and does not extend to the charter, leaving it to Lesser, as the town attorney, to resolve any conflicts between those sources.
Lesser forwarded the January 30 letter to the board with a cover letter dated January 31, 2017, continuing to opine that the board's resolution declining to set a special election improperly "cites only [the charter], **764 and ignores the provisions of ... § 9-222 dealing with the term of the appointed selectman, not the method of appointment, which mandates the special election." Lesser provided the board with a resolution for consideration at its February 1, 2017 meeting that would rescind the previous resolution and schedule a special election on June 6, 2017. At that meeting, the board considered Lesser's proposed resolution and voted two to one against it, again declining to schedule a special election. Nevertheless, on February 3, 2017, Lesser instructed Browne to issue statutory notices calling a special election. Browne issued that notice to the Secretary on February 6, 2017, and then sent copies of that notice to the chairmen of the Democratic and Republican town committees.
Subsequently, on February 17, 2017, the plaintiffs brought the present application, seeking a writ of mandamus ordering the board to schedule a date for that special election. On March 10, 2017, after hearing argument based on stipulated facts, the trial court concluded that the board was required to conduct a special election in accordance with § 9-222. In a subsequent memorandum of decision, the trial court reasoned that "there is no conflict between the charter and the statute" because "[w]hile both § 9-222 and the ... [c]harter require that a vacancy on the [b]oard ... be filled within thirty days, only the statute addresses the length of the replacement appointee's term. As the charter does not address the term to be served by the appointed person, and neither authorizes nor forbids a special election, the defendants' restrictive interpretation of the charter would create a conflict where none exists. Accordingly, in the absence of a conflict, the court finds that [General Statutes] § 9-7 does not apply to the present case, and instead finds that the statutory provision concerning special elections in § 9-222 is applicable to the present case." Accordingly, the trial **765 court rendered judgment for the plaintiffs and issued a writ of mandamus ordering the board "to schedule a special election for the office of selectman of ... in accordance with ... § 9-222 and the applicable statutes referenced *258 therein."[6]
The defendants then filed the present appeal from the judgment of the trial court granting the writ of mandamus.[7] With no appellate stay in place prior to the argument and decision of this appeal,[8] the town **766 conducted the special election on June 6, 2017. This resulted in the election of Kevin P. Kiley to the seat previously held by McArdle, into which the board had previously appointed Bateson.
On appeal, the defendants ask us to vacate the writ of mandamus, to void the June 6, 2017 special election, and to reinstate Bateson to the board. They claim that the trial court improperly determined that § 6.3 (B) of the charter fails to address the term of the person appointed to fill the vacancy and, therefore, must be read together with § 9-222, which allows a special election. The defendants further contend that the trial court improperly construed § 6.3 (B) of the charter to require a special election because the charter's incorporation of § 9-222, by way of reference to chapter 146 of the General Statutes, was contingent on the board's failure to fill the vacancy within thirty days. Relying on home rule principles, the defendants argue that the charter controls over conflicting statutes insofar as filling a vacancy on a town's legislative body is a matter of local concern.
In response, the plaintiffs contend that the trial court properly determined that the town is subject to the procedures set *259 forth in chapter 146 of the General Statutes, and specifically the special election required by § 9-222, because those provisions supplement, rather than conflict with, the charter. The plaintiffs emphasize that "[a]mbiguities in election laws are construed to allow the greatest scope for public participation in the electoral process, to allow candidates to get on the ballot, to allow parties to put their candidates on the ballot, and most importantly to allow the voters a choice on [e]lection [d]ay." (Internal quotation marks omitted.) **767 Butts v. Bysiewicz , 298 Conn. 665, 675, 5 A.3d 932 (2010). Citing article I, § 1.1, of the charter for the proposition that "rights conferred by statute are supplementary to the charter," the plaintiffs then argue that there is no home rule violation because the charter is silent as to the term of office of one appointed to fill a vacancy on the board, and, therefore, the term of office provisions in § 9-222, defining a term of office for an appointee as the earlier of (1) the end of the remaining term of the selectman who the appointee replaced, or (2) the election of a replacement selectman in a duly held special election, do not conflict with the charter. We, however, agree with the defendants and conclude that filling a vacancy on the board is a purely local function that, in light of principles of home rule, must be governed exclusively by § 6.3 (B) of the charter, given its conflict with the procedure set forth in § 9-222.
The dispositive issue in this appeal, namely, whether § 6.3 (B) of the charter and § 9-222 conflict, and the effect of any conflict between the two provisions, presents a question of law over which we exercise plenary review.[9] See, e.g., **768 Kiewlen v. Meriden , 317 Conn. 139, 149, 115 A.3d 1095 (2015) (noting plenary standard of review applies to statutory construction and interpretation of municipal charters); see also Board of Education v. Naugatuck , 268 Conn. 295, 307-308, 843 A.2d 603 (2004) ; Windham Taxpayers Assn. v. Board of Selectmen , 234 Conn. 513, 532, 662 A.2d 1281 (1995). "In construing a [municipal] charter, the rules of statutory construction generally apply.... In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws." (Internal quotation marks omitted.) Kiewlen v. Meriden , supra, at 149, 115 A.3d 1095.
"It is settled law that as a creation of the state, a municipality has no inherent powers of its own.... A municipality has only those powers that have *260 been expressly granted to it by the state or that are necessary for it to discharge its duties and to carry out its objects and purposes." (Citations omitted; internal quotation marks omitted.) Windham Taxpayers Assn. v. Board of Selectmen , supra, 234 Conn. at 528-29, 662 A.2d 1281. "The Home Rule Act (act) is the relevant statutory authority. Under the act, municipalities have the power to adopt a charter to serve as the organic law of that municipality.... It is well established that a [town's] charter is the fountainhead of municipal powers.... The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., at 529, 662 A.2d 1281 ; see General Statutes § 7-188 (a) ; Windham Taxpayers Assn. v. Board of Selectmen , supra, at 530-31, 662 A.2d 1281 (describing standards for charters prescribed by General Statutes § 7-193, including "the various forms of legislative bodies that municipalities may adopt"). **769 "The purpose [of the act] is clearly twofold: to relieve the General Assembly of the burdensome task of handling and enacting special legislation of local municipal concern and to enable a municipality to draft and adopt a home rule charter or ordinance which shall constitute the organic law of the [municipality], superseding its existing charter and any inconsistent special acts.... The rationale of the act, simply stated, is that issues of local concern are most logically answered locally, pursuant to a home rule charter, exclusive of the provisions of the General Statutes.... Moreover, home rule legislation was enacted to enable municipalities to conduct their own business and [to] control their own affairs to the fullest possible extent in their own way ... upon the principle that the municipality itself [knows] better what it want[s] and need[s] than ... the state at large, and to give that municipality the exclusive privilege and right to enact direct legislation which would carry out and satisfy its wants and needs.... Consistent with this purpose, a state statute cannot deprive [municipalities] of the right to legislate on purely local affairs germane to [municipal] purposes.... Consequently, a general law, in order to prevail over a conflicting charter provision of a [municipality] having a home rule charter, must pertain to those things of general concern to the people of the state ...."[10] (Citations omitted; internal quotation marks omitted.) Board of Education v. Naugatuck , supra, 268 Conn. at 306-307, 843 A.2d 603 ; see also Morris v. Congdon , 277 Conn. 565, 570, 893 A.2d 413 (2006) ("The town in the present case **770 does not have a charter or home rule ordinance, and its powers were not granted by a special act. Thus, its powers are delineated by the General Statutes.").
"[I]n an area of local concern, such as local budgetary policy, general statutory provisions must yield to municipal charter provisions governing the same subject matter." Board of Education v. Naugatuck , supra, 268 Conn. at 308-309, 843 A.2d 603. "Our constitutional home rule provision[11] ... prohibits the legislature *261 from encroaching on the local authority to regulate matters of purely local concern, such as the organization of local government or local budgetary policy ." (Emphasis altered; footnote added; internal quotation marks omitted.) Id., at 309-10, 843 A.2d 603. "In contrast, matters that concern public health and safety, and other areas within the purview of a state's police power, have traditionally been viewed as matters of statewide concern." Windham Taxpayers Assn. v. Board of Selectmen , supra, 234 Conn. at 536, 662 A.2d 1281. Ultimately, a matter is of local concern when it "relates to concerns that are of particular importance to the town itself" or, put differently, "impacts only the municipality itself and does not affect the interests of the rest of the state." Id., at 536-37, 662 A.2d 1281 ; see also Pereira v. State Board of Education , 304 Conn. 1, 121-22, 37 A.3d 625 (2012) (Palmer, J. , dissenting) (rejecting claim that General Statutes § 10-223e [h], "a statute of general application" imposing **771 training requirement prior to reconstitution of local school board, violates constitutional home rule provision because "education is a matter of statewide concern").
In the present case, the plaintiffs do not dispute the defendants' contention that the process by which a town fills a vacant seat on its local legislative body, such as a board of selectmen, is a matter of purely local concern for the purpose of home rule.[12] See Resnick v. Ulster County , 44 N.Y.2d 279, 287-88, 376 N.E.2d 1271, 405 N.Y.S.2d 625 (1978) (county legislature); Baranello v. Suffolk County Legislature , 126 App. Div. 2d 296, 301-303, 513 N.Y.S.2d 444 (county executive), appeal dismissed, 69 N.Y.2d 1037, 511 N.E.2d 88, 517 N.Y.S.2d 1029 (1987) ; State ex rel. Toledo v. Board of Elections , 95 Ohio St. 3d 73, 79, 765 N.E.2d 854 (2002) (city council); accord Dumais v. Underwood , 47 Conn. App. 783, 793, 707 A.2d 333 ("the manner in which members are appointed to a charter revision commission is a matter of local concern governed by the town's charter, unless specifically prohibited by the constitution or General Statutes"), cert. denied, *262 244 Conn. 918, 714 A.2d 4 (1998). Accordingly, we must consider whether there is a conflict between § 9-222 and § 6.3 (B) of the charter **772 that would render the latter exclusively controlling with respect to filling a vacant seat on the board.[13]
Turning to the statute first, we note that § 9-222 requires the board to fill vacancies within thirty days, and remedies the board's failure to do so by referring the matter to the other "elective town officers" for initial decision. See General Statutes § 9-222 ("[i]f such a vacancy ... is not so filled within thirty days after the day of its occurrence, the town clerk shall, within ten days thereafter, notify the elective town officers enrolled in the same political party as the first selectman or selectman, as the case may be, who vacated the office, or all elective town officers, if such first selectman or selectman who vacated the office was not enrolled with a political party, and it shall be filled by such elective town officers within sixty days after its occurrence"). The statute then defines the term of the person appointed by that process to fill the vacancy in the disjunctive, providing that person "shall serve for the portion of the term remaining unexpired or until a special election called as hereinafter provided upon petition of a number of electors of such town equal to five per cent of the names on the last-completed registry list thereof, but not fewer than fifty such electors. Such petition shall be filed no later than fifteen days after the appointment by the remaining selectmen or such elective town officers ...." (Emphasis added.) General Statutes § 9-222.
**773 In contrast, the charter provides more simply: "At any time a vacancy occurs on the [board], including [f]irst [s]electman, a replacement, who shall be registered with the same political party as the person vacating the office, shall be designated by the remaining [s]electmen. If the [s]electmen designate one of themselves to fill the vacancy, they shall designate another elector to fill the vacancy of [s]electman so created. If the vacancy is not filled within [thirty] days, the vacancy shall be filled in accordance with the procedure set forth in [c]hapter 146 of the General Statutes for filling vacancies in the office of selectman." Fairfield Town Charter § 6.3 (B). Significantly, and in contrast to § 9-222, the charter does not provide for a special election when the board has filled the vacancy within thirty days.
"[W]here a charter specifies a mode of appointment, strict compliance is required.... More specifically, [i]f the charter points out a particular way in which any act is to be done or in which an officer is to be elected, then, unless these forms are pursued in the doing of any act or in the electing of the officer, the act or the election is not lawful." (Citation omitted; internal quotation marks omitted.) Bateson v. Weddle , 306 Conn. 1, 14, 48 A.3d 652 (2012) ; see also DeMayo v. Quinn , 315 Conn. 37, 41, 105 A.3d 141 (2014).
So long as the board has acted to fill the vacant position within thirty days, § 6.3 *263 (B) of the charter, unlike § 9-222, does not provide for a special election to fill board vacancies. Significantly, the charter explicitly limits the use of statutory procedures by employing the contingent term "if"; such a construction contemplates a contingency that did not occur in the present case-namely, a failure by the board to fill the vacancy created by McArdle's resignation within thirty days. See, e.g., Peck v. Jacquemin , 196 Conn. 53, 70, 491 A.2d 1043 (1985) ("The word 'if,' which is a conjunction, is entitled to be accorded its common meaning here of 'in the event **774 that.' ... So interpreted, it introduces the condition or contingency that immediately follows it ...." [Citations omitted.] ). Holding a special election after the board has filled a vacancy in a timely manner would require us to rewrite the charter by adding language that its drafters may well have elected to omit. See, e.g., Mayer v. Historic District Commission , 325 Conn. 765, 776, 160 A.3d 333 (2017) ; see also State ex rel. Barlow v. Kaminsky , 144 Conn. 612, 620, 136 A.2d 792 (1957) ("A statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way. An enumeration of powers in a statute is uniformly held to forbid the things not enumerated.").
We further disagree with the plaintiffs' argument that we can apply the special election provision of § 9-222 without conflict with the charter because § 6.3 (B) of the charter is silent as to the length of the replacement selectman's term, thus allowing harmonization of the two provisions. Insofar as § 6.3 (B) of the charter-in contrast to § 9-222-does not provide for the prospect of a special election by which to end the term of the board's appointee to the vacancy, it would be surplusage to explain further in the charter that the appointee shall, in the words of the statute, "serve for the portion of the term remaining unexpired." This is because a "vacancy" is understood to mean an opening in an office arising during the term prior to the next regularly scheduled election. As the Rhode Island Supreme Court has explained, the "word 'vacancy' generally has no technical meaning, other than 'empty' and 'unoccupied,' as applied to an office without an incumbent.... 'Vacancy' refers not to the incumbent but to the term or to the office .... The office of [the] mayor of Providence was left vacant because it was not occupied by an incumbent who had the right to continue therein **775 until the next general election."[14] (Citations omitted; emphasis added.) Gelch v. State Board of Elections , 482 A.2d 1204, 1211 (R.I. 1984) ; cf. Alcorn ex rel. Hendrick v. Keating , 120 Conn. 427, 434-35, 181 A. 340 (1935) ("[i]n the absence of a definite provision that an officer shall hold not only for the specified term but also until his successor is elected or appointed and qualified, while the incumbent is held to be entitled to hold over until a successor is chosen, he is generally regarded as holding de facto only, so that his occupancy of the office does not prevent the existence of a vacancy to be filled by the authority duly empowered to do so"); see also Gelch v. State Board of Elections , supra, at 1210 (A mayor, who forfeited office because of a felony conviction, was barred from running in a special election to fill that vacancy because the "charter has fixed the 'term of office of the *264 mayor' at four years. The current term of office began in January 1983 and will continue to exist despite a vacancy in the office of mayor until a successor is elected and qualified for the new term beginning in January 1987. A removal of an officer for disqualification does not operate to divide the term or create a new and distinct one."); Turner v. Shumlin , 163 A.3d 1173, 1186-87 (Vt. 2017) (outgoing governor lacked authority to fill anticipated supreme court justice vacancy because vacancy did not yet exist during governor's term); 3 E. McQuillin, Municipal Corporations (3d Ed. Rev. 2017) § 12:164 (citing authorities).
To this end, we similarly disagree with the plaintiffs' reliance on § 1.1 of the charter for the proposition that **776 "rights conferred by statute are supplementary to the charter, and the [t]own's electors ... possess the power and privilege, conferred upon them by [§] 9-222, of petitioning for a special election to replace an appointed selectman." That section, which governs the "[i]ncorporation and powers" of the town, provides in relevant part: "All the inhabitants dwelling within the [town], as previously constituted, shall continue to be a body politic and corporate under the name of the [town] ... and shall have all powers and privileges and immunities previously exercised by the [t]own and not inconsistent with this [c]harter, the additional powers and privileges conferred in this [c]harter, and all powers and privileges conferred upon towns under the General Statutes ...." Fairfield Town Charter § 1.1. We disagree with the plaintiffs' reliance on § 1.1 of the charter for two reasons arising from our well established extension of principles of statutory construction to the charter, under which "effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws." (Internal quotation marks omitted.) Kiewlen v. Meriden , supra, 317 Conn. at 149, 115 A.3d 1095. First, § 1.1 of the charter is a general provision that would not control over § 6.3 (B) of the charter, which is specifically on point. See, e.g., Studer v. Studer , 320 Conn. 483, 497-98, 131 A.3d 240 (2016) ("[t]he provisions of one statute which specifically focus on a particular problem will always, in the absence of express contrary legislative intent, be held to prevail over provisions of a different statute more general in its coverage" [internal quotation marks omitted] ). Second, the plaintiffs' interpretation of § 1.1 of the charter would render superfluous the directive in § 6.3 (B) of the charter to follow the statutory procedure in the event that the board fails to act to fill the vacancy within thirty days, by requiring resort to the statutory procedure in all cases. See, e.g., **777 State v. Davalloo , 320 Conn. 123, 140, 128 A.3d 492 (2016) ("[w]e ordinarily do not read statutes so as to render parts of them superfluous or meaningless" [internal quotation marks omitted] ).
Given the language of the provisions at issue in the present case, we find particularly instructive the Ohio Supreme Court's decision in State ex rel. Devine v. Hoermle , 168 Ohio St. 461, 156 N.E.2d 131 (1959), which considered conflicting city charter and state statutory provisions with respect to filling a vacancy on the Columbus city council. See id., at 462, 156 N.E.2d 131 ("[w]here such charter provisions specify who shall make such appointments, statutory provisions authorizing an appointment by someone else cannot apply in the absence of their adoption by other provisions of the charter"). Specifically, the charter provision at issue in that case stated only that " '[v]acancies in council shall be filled ... by the council for the remainder of the unexpired term,' " whereas the state statute "empower[ed] the mayor to 'fill by ... appointment' a vacancy in the legislative authority of a municipal corporation 'if the *265 legislative authority fails within thirty days to fill such vacancy'...." Id., at 463, 156 N.E.2d 131. Considering these two provisions, the court rejected the argument that the mayor had any authority at all under the charter to fill the vacant council seat; this argument had been premised on the theory that the statutory and charter provisions were "not in conflict," but, instead, should be read together so as to require the council to act within a "reasonable time" before the mayor was authorized to act. Id. The court held instead that this reading would impermissibly require the addition of language to the charter, which "grants the power to fill vacancies to council and to no one else. Applying the doctrine of expressio unius est exclusio alterius ... it is apparent that the charter denies such power to the mayor. It necessarily follows that the statute giving the mayor such power under **778 certain circumstances conflicts with ... the charter." (Citation omitted.) Id.
Accordingly, with no attack on the validity of the charter provision at issue in the present case, we conclude that it controls the method by which to fill the vacancy on the board.[15] Because the board timely designated a new selectman, the provision of the charter directing resort to chapter 146 of the General Statutes, which could have required a special election pursuant to § 9-222, simply was not triggered.
Finally, we address the plaintiffs' argument, made in their briefs and emphasized at oral argument before this court, that construing the charter in a manner allowing the vacancy to be filled only by appointment or designation, rather than by special election as provided by § 9-222, is antidemocratic and disenfranchises **779 the town's electors, particularly in light of a 2006 charter amendment extending a selectman's term of office from two years to four. First, the electors have not been deprived of their opportunity to participate in the democratic process with respect to the procedure for filling a vacancy because, "[a]s the source of a municipality's powers, charters are generally adopted and amended at a referendum by the municipality's electors. See General Statutes § 7-191." Turn of River Fire Dept., Inc. v. Stamford , 159 Conn. App. 708, 722, 123 A.3d 909 (2015) ; see also *266 id., at 722, 123 A.3d 909 ("[a] charter bears the same general relation to the ordinances of the city that the constitution of the state bears to the statutes" [internal quotation marks omitted] ). Thus, even if we were to agree with the plaintiffs that a special election is, as a public policy matter, the best way to fill the vacancy on the board given the lengthened term of office, "[a]ny change ... must come from the inhabitants of the town ... who adopted the charter. Although policy considerations may since have changed, and [the charter] provisions may be less desirable to our present society, this court is precluded from substituting its own ideas of what might be a wise provision in place of a clear expression of legislative will." (Internal quotation marks omitted.) Burwell v. Board of Selectmen , 178 Conn. 509, 519, 423 A.2d 156 (1979). "If the charter is to be altered, the town, not this court, must be the forum for any amendment or revision." Id. Accordingly, we conclude that the trial court improperly granted a writ of mandamus directing that a special election be held to fill the vacancy caused by McArdle's resignation. As a result, Bateson is entitled to reinstatement to the office of selectman.
The judgment is reversed and the case is remanded with direction to render judgment for the defendants.
In this opinion the other justices concurred.

General Statutes § 9-222 provides in relevant part: "When a vacancy occurs in the office of first selectman or in the office of selectman it shall be filled within thirty days after the day of its occurrence by the remaining members of the board of selectmen. Said remaining members may appoint one of themselves to fill a vacancy in the office of first selectman, if they so desire, and shall then fill the ensuing vacancy in the office of selectman as herein provided. If such a vacancy in the office of first selectman or of selectman is not so filled within thirty days after the day of its occurrence, the town clerk shall, within ten days thereafter, notify the elective town officers enrolled in the same political party as the first selectman or selectman, as the case may be, who vacated the office, or all elective town officers, if such first selectman or selectman who vacated the office was not enrolled with a political party, and it shall be filled by such elective town officers within sixty days after its occurrence. Any person so appointed shall serve for the portion of the term remaining unexpired or until a special election called as hereinafter provided upon petition of a number of electors of such town equal to five per cent of the names on the last-completed registry list thereof, but not fewer than fifty such electors. Such petition shall be filed no later than fifteen days after the appointment by the remaining selectmen or such elective town officers, as the case may be. Such a special election shall forthwith be called by the town clerk upon the filing of such a petition with him and shall be held in accordance with the provisions of sections 9-164, 9-450 and 9-459...."

The individual members of the board at the time the present action was commenced, Michael C. Tetreau, Christopher W. Tymniak, and Edward J. Bateson III, were also named as defendants in their official capacities. We note, however, that Tetreau agrees with the plaintiffs and has adopted their brief in the present appeal. For the sake of convenience, we refer collectively to the town, the board, Tymniak, and Bateson as the defendants.

The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199(c) and Practice Book § 65-1. See also footnotes 7 and 8 of this opinion (setting forth additional appellate procedural history).

The plaintiffs, Tara Cook-Littman, Steven Sheinberg, J. Tyson Toller, Jennifer Jacobsen, and Frank Sahagian, Jr., are electors of the town who have signed a petition seeking a special election pursuant to § 9-222.

Article VI, § 6.3 (B), of the Fairfield Town Charter provides: "Method of filling vacancies on the [board]. At any time a vacancy occurs on the [board], including [f]irst [s]electman, a replacement, who shall be registered with the same political party as the person vacating the office, shall be designated by the remaining [s]electmen. If the [s]electmen designate one of themselves to fill the vacancy, they shall designate another elector to fill the vacancy of [s]electman so created. If the vacancy is not filled within [thirty] days, the vacancy shall be filled in accordance with the procedure set forth in [c]hapter 146 of the General Statutes for filling vacancies in the office of selectman."

The trial court issued a separate order, "find[ing] good cause to deviate from the statutory scheme," and ordered the following schedule for the special election: (1) "[p]arty nominations on or before April 4, 2017"; (2) "[p]rimary petitions ... due by April 18, 2017"; (3) "[p]rimary date May 9, 2017"; and (4) "[s]pecial election to be held on June 6, 2017."

The defendants made several unsuccessful attempts to obtain expedited review of this appeal, which they filed in the Appellate Court on April 5, 2017. First, on March 15, 2017, the defendants moved the trial court for an order pursuant to General Statutes § 9-325 to facilitate direct expedited review of an election or primary dispute by this court. See also General Statutes § 51-199(b)(5). On March 20, 2017, the trial court denied the defendants' motion, concluding in a memorandum of decision issued on March 24, 2017, that this case did not arise from a "ruling of an election official" or in connection with an election as contemplated by General Statutes § 9-328.
The defendants also filed two separate applications to the Chief Justice for certification to appeal pursuant to General Statutes § 52-265a. Chief Justice Rogers denied the first application, filed on March 30, 2017, "without prejudice to the filing of a second application by either party following any ruling by the trial court on the issue of a stay of execution during the pendency of the appeal in the Appellate Court." Following the termination of the appellate stay by the trial court, Chief Justice Rogers subsequently denied the defendants' second application, which was filed on May 17, 2017.

We note that prior to the transfer of the appeal from the Appellate Court to this court; see footnote 3 of this opinion; the trial court granted the plaintiffs' motion to terminate the appellate stay. On May 24, 2017, the Appellate Court granted the defendants' motion for review, but denied the relief requested, thus declining to disturb the trial court's decision to terminate the appellate stay. On June 2, 2017, the Appellate Court granted the board's motion for reconsideration en banc, but denied the relief requested, relying on Tomasso Bros, Inc. v. October Twenty-Four, Inc. , 230 Conn. 641, 657, 646 A.2d 133 (1994), and Monroe v. Middlebury Conservation Commission , 187 Conn. 476, 481, 447 A.2d 1 (1982), to conclude that the trial court's judgment granting a writ of mandamus and ordering that the board schedule a special election was in effect a permanent injunction from which no automatic stay arose. On June 21, 2017, the defendants filed a petition for certification to appeal from the decision of the Appellate Court terminating the stay, which we dismissed on November 2, 2017. See Cook-Littman v. Board of Selectmen , 327 Conn. 956, 171 A.3d 1050 (2017).

By way of background, we note that a "writ of mandamus is an extraordinary remedy, available in limited circumstances for limited purposes.... It is fundamental that the issuance of the writ rests in the discretion of the court, not an arbitrary discretion exercised as a result of caprice but a sound discretion exercised in accordance with recognized principles of law.... That discretion will be exercised in favor of issuing the writ only where the plaintiff has a clear legal right to have done that which he seeks.... The writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy....
"In deciding the propriety of a writ of mandamus, the trial court exercises discretion rooted in the principles of equity.... In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action.... Nevertheless, this court will overturn a lower court's judgment if it has committed a clear error or misconceived the law." (Citations omitted; internal quotation marks omitted.) Morris v. Congdon , 277 Conn. 565, 569, 893 A.2d 413 (2006).

"In the numerous jurisdictions having either constitutional or legislative municipal home rule, the overwhelming view accords to the municipality the fullest extent of home rule authority, consistent with law, in matters of local concern.... Furthermore, in order to achieve the goal of local autonomy over issues of local concern, we do not apply a strict construction to the home rule legislation, because to do so would stifle local initiative ...." (Citations omitted; internal quotation marks omitted.) Windham Taxpayers Assn. v. Board of Selectmen , supra, 234 Conn. at 535, 662 A.2d 1281.

Article tenth, § 1, of the Connecticut constitution provides: "The general assembly shall by general law delegate such legislative authority as from time to time it deems appropriate to towns, cities and boroughs relative to the powers, organization, and form of government of such political subdivisions. The general assembly shall from time to time by general law determine the maximum terms of office of the various town, city and borough elective offices. After July 1, 1969, the general assembly shall enact no special legislation relative to the powers, organization, terms of elective offices or form of government of any single town, city or borough, except as to (a) borrowing power, (b) validating acts, and (c) formation, consolidation or dissolution of any town, city or borough, unless in the delegation of legislative authority by general law the general assembly shall have failed to prescribe the powers necessary to effect the purpose of such special legislation."

We note that the act does not, however, give municipalities carte blanche with respect to of the conduct of their elections. See General Statutes § 7-192a ("No provision of this chapter shall be deemed to empower any municipality to levy or collect any tax not authorized by the general statutes or to adopt a charter, charter amendments or home rule ordinance amendments which shall affect matters concerning qualification and admission of electors; duties and responsibilities of registrars of voters; duties and responsibilities of town clerks with respect to electors, voting and elections; forfeiture of electoral rights and restoration of the same; absentee voting; conduct of and procedures at elections; hours of voting; canvass of electors; preliminary, final and supplementary registry lists; warning of elections; election officials and their duties and responsibilities; election canvass and returns; election contests; corrupt practices; prohibited acts with respect to elections; nomination of candidates; adoption and amendment of party rules; primaries; and political parties and enrollment therein.").

We acknowledge that, in determining whether a municipal charter governs, judicial opinions discussing the legal concept of home rule often refer to "conflicts" between local charters and state statutes. See, e.g., Board of Education v. Naugatuck , supra, 268 Conn. at 306-307, 843 A.2d 603. We emphasize, however, that when a charter speaks to a matter of local concern, the relevant charter provision governs proceedings on that point regardless of the existence of a state statute addressing the same topic. Even if that charter provision is ambiguous, the statute's role is limited to its relevance to resolving the ambiguity in the charter; the statute governs only when the charter does not address the situation at hand.

"The leading legal dictionary unambiguously defines the word 'vacancy' as follows: '1. The quality, state, or condition of being unoccupied, esp. in reference to an office .... 2. The time during which an office ... is not occupied. 3. An unoccupied office .... [A] vacancy, properly speaking, does not occur until the officer is officially removed. 4. A job opening; a position that has not been filled.' ... Black's Law Dictionary (10th Ed. 2014) [p. 1782] ...." (Citations omitted.) Turner v. Shumlin , 163 A.3d 1173, 1184 (Vt. 2017).

Given the primacy of the charter over the conflicting statutory provision in this uniquely local matter, and the lack of any statutory language in § 9-222 expressly invalidating local provisions to the contrary, we address only briefly the parties' arguments with respect to whether General Statutes § 9-7 preserves the charter in the wake of the enactment of § 9-222, even though the town has amended the relevant charter provisions since 1953. Specifically, the defendants contend that § 6.3 (B) of the charter is "grandfathered explicitly by § 9-7" because it existed prior to 1953, whereas the plaintiffs argue that § 9-7 is inapplicable because the charter has been amended six times and now "differs significantly from the charter in effect in 1953, including being different with respect to the term of office of selectmen and the manner of filling vacancies [on] the [board]." We observe that § 9-7 provides: "No provision of this title or the sections listed in section 9-1 shall be construed to repeal any charter provision in existence on May 14, 1953, relative to the election, term of office or powers or duties of any municipal officer or to the manner of warning or conducting any municipal meeting or any election, but the powers and duties of such officers shall remain as provided in such charter." In light of the act, we understand § 9-7 to preserve charter provisions governing municipal elections that otherwise would be expressly preempted by state statutes, but for the fact that they existed on May 14, 1953. See Blanco v. Gangloff , 28 Conn. Supp. 403, 405-409, 265 A.2d 502 (1970) (rejecting claim that, under § 9-7, city charter took "precedence" over General Statutes § 9-167a, minority representation statute, given preemptive language in § 9-167a and subsequent special acts conforming charter to § 9-167a ).